O'SHEA, MAGISTRATE, CIRCUIT COURT OF
ALEXANDER COUNTY, ILLINOIS, ET AL. *v.*
LITTLETON ET AL.

No. 72–953.   Argued October 17, 1973—Decided January 15, 1974

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, POWELL, and REHNQUIST, JJ., joined. BLACK-MUN, J., filed an opinion concurring in the judgment and in Part I of the Court's opinion, *post*, p. 504. DOUGLAS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 505.

*Robert J. O'Rourke,* Deputy Assistant Attorney General of Illinois, argued the cause for petitioners. With

him on the briefs were *William J. Scott,* Attorney General, *Fred F. Herzog,* First Assistant Attorney General, *John W. Freels,* Special Assistant Attorney General, and *Jerrald B. Abrams,* Assistant Attorney General.

*Alan M. Wiseman* argued the cause for respondents. With him on the brief were *James B. O'Shaughnessy* and *Michael P. Seng.*[*]

MR. JUSTICE WHITE delivered the opinion of the Court.

The respondents are 19 named individuals who commenced this civil rights action, individually and on behalf of a class of citizens of the city of Cairo, Illinois, against the State's Attorney for Alexander County, Illinois, his investigator, the Police Commissioner of Cairo, and the petitioners here, Michael O'Shea and Dorothy Spomer, Magistrate and Associate Judge of the Alexander County Circuit Court, respectively, alleging that they have intentionally engaged in, and are continuing to engage in, various patterns and practices of conduct in the administration of the criminal justice system in Alexander County that deprive respondents of rights secured by the First, Sixth, Eighth, Thirteenth, and Fourteenth Amendments, and by 42 U. S. C. §§ 1981, 1982, 1983, and 1985. The complaint, as amended, alleges that since the early 1960's, black citizens of Cairo, together with a small number of white persons on their behalf, have been actively, peaceably and lawfully seeking equality of opportunity and treatment in employment, housing, education, participation

---

[*]Briefs of *amici curiae* urging reversal were filed by *Evelle J. Younger,* Attorney General, *Edward A. Hinz, Jr.,* Chief Assistant Attorney General, *Doris H. Maier* and *Edward P. O'Brien,* Assistant Attorneys General, and *Robert R. Granucci,* Deputy Attorney General, for the State of California; and by *Jack E. Horsley* and *Richard F. Record, Jr.,* for the Illinois State Bar Assn.

in governmental decisionmaking and in ordinary day-to-day relations with white citizens and officials of Cairo, and have, as an important part of their protest, partici-pated in, and encouraged others to participate in, an economic boycott of city merchants who respondents con-sider have engaged in racial discrimination. Allegedly, there ·had resulted a great deal of tension and antago-nism among the white citizens and officials of Cairo.

The individual respondents are 17 black and two white residents of Cairo. The class, or classes, which they pur-port to represent are alleged to include "all those who, on account of their race or creed and because of their exercise of First Amendment rights, have [been] in the past and continue to be subjected to the unconstitutional and selectively discriminatory enforcement and adminis-tration of criminal justice in Alexander County," as well as financially poor persons "who, on account of their poverty, are unable to afford bail, or are unable to afford counsel and jury trials in city ordinance violation cases." The complaint charges the State's Attorney, his investi-gator, and the Police Commissioner with a pattern and practice of intentional racial discrimination in the per-formance of their duties, by which the state criminal laws and procedures are deliberately applied more harshly to black residents of Cairo and inadequately applied to white persons who victimize blacks, to deter respondents from engaging in their lawful attempt to achieve equality. Specific supporting examples of such conduct involving some of the individual respondents are detailed in the complaint as to the State's Attorney and his investigator.

With respect to the petitioners, the county magis-trate and judge, a continuing pattern and practice of conduct, under color of law, is alleged to have denied and to continue to deny the constitutional rights of respondents and members of their class in three respects:

(1) petitioners set bond in criminal cases according to an unofficial bond schedule without regard to the facts of a case or circumstances of an individual defendant in violation of the Eighth and Fourteenth Amendments; (2) "on information and belief" they set sentences higher and impose harsher conditions for respondents and members of their class than for white persons, and (3) they require respondents and members of their class when charged with violations of city ordinances which carry fines and possible jail penalties if the fine cannot be paid, to pay for a trial by jury in violation of the Sixth, Eighth, and Fourteenth Amendments. Each of these continuing practices is alleged to have been carried out intentionally to deprive respondents and their class of the protections of the county criminal justice system and to deter them from engaging in their boycott and similar activities. The complaint further alleges that there is no adequate remedy at law and requests that the practices be enjoined. No damages were sought against the petitioners in this case, nor were any specific instances involving the individually named respondents set forth in the claim against these judicial officers.

The District Court dismissed the case for want of jurisdiction to issue the injunctive relief prayed for and on the ground that petitioners were immune from suit with respect to acts done in the course of their judicial duties. The Court of Appeals reversed, holding that *Pierson* v. *Ray*, 386 U. S. 547, 554 (1967), on which the District Court relied, did not forbid the issuance of injunctions against judicial officers if it is alleged and proved that they have knowingly engaged in conduct intended to discriminate against a cognizable class of persons on the basis of race. Absent sufficient remedy at law, the Court of Appeals ruled that in the event respondents proved their allegations, the District Court should proceed to fashion appropriate injunctive relief

to prevent petitioners from depriving others of their constitutional rights in the course of carrying out their judicial duties in the future.[1]   We granted certiorari. 411 U. S. 915 (1973).

I

We reverse the judgment of the Court of Appeals. The complaint failed to satisfy the threshold requirement imposed by Art. III of the Constitution that those who seek to invoke the power of federal courts must allege an actual case or controversy. *Flast* v. *Cohen,* 392 U. S. 83, 94–101 (1968); *Jenkins* v. *McKeithen,* 395 U. S. 411, 421–425 (1969) (opinion of MARSHALL, J.). Plaintiffs in the federal courts "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Linda R. S.* v. *Richard D.,* 410 U. S. 614, 617 (1973).[2]   There

---

[1] While the Court of Appeals did not attempt to specify exactly what type of injunctive relief might be justified, it at least suggested that it might include a requirement of "periodic reports of various types of aggregate data on actions on bail and sentencing." 468 F. 2d, at 415. The dissenting judge urged that a federal district court has no power to supervise and regulate by mandatory injunction the discretion which state court judges may exercise within the limits of the powers vested in them by law, and that any relief contemplated by the majority holding which might be applicable to the pattern and practice alleged, if proven, would subject the petitioners to the continuing supervision of the District Court, the necessity of defending their motivations in each instance when the fixing of bail or sentence was challenged by a Negro defendant as inconsistent with the equitable relief granted, and the possibility of a contempt citation for failure to comply with the relief awarded. *Id.,* at 415–417.

[2] We have previously noted that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. See, *e. g., Trafficante* v. *Metropolitan Life Ins. Co.,* 409 U. S. 205, 212 (1972) (WHITE, J., concurring); *Hardin* v. *Kentucky Utilities Co.,* 390 U. S. 1, 6 (1968)." *Linda R. S.* v. *Richard D.,* 410 U. S. 614, 617

must be a "personal stake in the outcome" such as to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker* v. *Carr*, 369 U. S. 186, 204 (1962). Nor is the principle different where statutory issues are raised. Cf. *United States* v. *SCRAP*, 412 U. S. 669, 687 (1973). Abstract injury is not enough. It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged statute or official conduct. *Massachusetts* v. *Mellon*, 262 U. S. 447, 488 (1923). The injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *Golden* v. *Zwickler*, 394 U. S. 103, 109–110 (1969); *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U. S. 270, 273 (1941); *United Public Workers* v. *Mitchell*, 330 U. S. 75, 89–91 (1947). Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.[3] *Bailey* v. *Patterson*, 369 U. S. 31, 32–33

n. 3 (1973). But such statutes do not purport to bestow the right to sue in the absence of any indication that invasion of the statutory right has occurred or is likely to occur. Title 42 U. S. C. § 1983, in particular, provides for liability to the "party injured" in an action at law, suit in equity, or other proper proceeding for redress. Perforce, the constitutional requirement of an actual case or controversy remains. Respondents *still must show actual or threatened injury* of some kind to establish standing in the constitutional sense.

[3] There was no class determination in this case as the complaint was dismissed on grounds which did not require that determination to be made. Petitioners assert that the lack of standing of the named respondents to raise the class claim is buttressed by the incongruous nature of the class respondents seek to represent. The class is variously and incompatibly defined in the complaint as those residents of Cairo, both Negro and white, who have boycotted

(1962); *Indiana Employment Division* v. *Burney,* 409 U. S. 540 (1973). See 3B J. Moore, Federal Practice, ¶ 23.10-1, n. 8 (2d ed. 1971).

In the complaint that began this action, the sole allegations of injury are that petitioners "have engaged in and continue to engage in, a pattern and practice of conduct . . . all of which has deprived and continues to deprive plaintiffs and members of their class of their" constitutional rights and, again, that petitioners "have denied and continue to deny to plaintiffs and members of their class their constitutional rights" by illegal bond-setting, sentencing, and jury-fee practices. None of the named plaintiffs is identified as himself having suffered any injury in the manner specified. In sharp contrast to the claim for relief against the State's Attorney where specific instances of misconduct with respect to particular individuals are alleged, the claim against petitioners alleges injury in only the most general terms. At oral argument, respondents' counsel stated that some of the named plaintiffs-respondents, who could be identified by name if necessary, had actually been defendants in proceedings before petitioners and had suffered from the alleged unconstitutional practices.[4] Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if

certain businesses in that city and engaged in similar activities for the purpose of combatting racial discrimination, as a class of all Negro citizens suffering racial discrimination in the application of the criminal justice system in Alexander County (though two white persons are named respondents), and as all poor persons unable to afford bail, counsel, or jury trials in city ordinance cases. The absence of specific claims of injury as a result of any of the wrongful practices charged, in light of the ambiguous and contradictory class definition proffered, bolsters our conclusion that these respondents cannot invoke federal jurisdiction to hear the claims they present in support of their request for injunctive relief.

[4] Tr. of Oral Arg. 21, 23, 26.

unaccompanied by any continuing, present adverse effects. Neither the complaint nor respondents' counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves serving an allegedly illegal sentence or were on trial or awaiting trial before petitioners. Indeed, if any of the respondents were then serving an assertedly unlawful sentence, the complaint would inappropriately be seeking relief from or modification of current, existing custody. See *Preiser* v. *Rodriguez,* 411 U. S. 475 (1973). Furthermore, if any were then on trial or awaiting trial in state proceedings, the complaint would be seeking injunctive relief that a federal court should not provide. *Younger* v. *Harris,* 401 U. S. 37 (1971); see also Part II, *infra.* We thus do not strain to read inappropriate meaning into the conclusory allegations of this complaint.

Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners. Important to this assessment is the absence of allegations that any relevant criminal statute of the State of Illinois is unconstitutional on its face or as applied or that respondents have been or will be improperly charged with violating criminal law. If the statutes that might possibly be enforced against respondents are valid laws, and if charges under these statutes are not improvidently made or pressed, the question becomes whether any perceived threat to respondents is sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses, in which event they may appear before petitioners and, if they do, will be affected by the

allegedly illegal conduct charged. Apparently, the proposition is that *if* respondents proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed. But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture. See *Younger* v. *Harris, supra,* at 41–42. The nature of respondents' activities is not described in detail and no specific threats are alleged to have been made against them. Accepting that they are deeply involved in a program to eliminate racial discrimination in Cairo and that tensions are high, we are nonetheless unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.

As in *Golden* v. *Zwickler,* we doubt that there is " 'sufficient immediacy and reality' " to respondents' allegations of future injury to warrant invocation of the jurisdiction of the District Court. There, "it was wholly conjectural that another occasion might arise when Zwickler might be prosecuted for distributing the handbills referred to in the complaint." 394 U. S., at 109. Here we can only speculate whether respondents will be arrested, either again or for the first time, for violating a municipal ordinance or a state statute, particularly in the absence of any allegations that unconstitutional criminal statutes are being employed to deter constitutionally protected conduct. Cf. *Perez* v. *Ledesma,* 401 U. S. 82, 101–102

(1971) (opinion of BRENNAN, J.). Even though Zwickler attacked a specific statute under which he had previously been prosecuted, the threat of a new prosecution was not sufficiently imminent to satisfy the jurisdictional requirements of the federal courts. Similarly, respondents here have not pointed to any imminent prosecutions contemplated against any of their number and they naturally do not suggest that any one of them expects to violate valid criminal laws. Yet their vulnerability to the alleged threatened injury from which relief is sought is necessarily contingent upon the bringing of prosecutions against one or more of them. Under these circumstances, where respondents do not claim any constitutional right to engage in conduct proscribed by therefore presumably permissible state laws, or indicate that it is otherwise their intention to so conduct themselves, the threat of injury from the alleged course of conduct they attack is simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court.

In *Boyle* v. *Landry*, 401 U. S. 77, 81 (1971), the Court ordered a complaint dismissed for insufficiency of its allegations where there was no basis for inferring "that any one or more of the citizens who brought this suit is in any jeopardy of suffering irreparable injury if the State is left free to prosecute under the intimidation statute in the normal manner." The Court expressed the view that "the normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future." *Ibid.* A similar element of uncertainty about whether the alleged injury will be likely to occur is present in this case, and a similar reluctance to interfere with the normal operation of state administration of its criminal laws in the manner sought by respondents strengthens the conclusion

that the allegations in this complaint are too insubstantial to warrant federal adjudication of the merits of respondents' claim.

## II

The foregoing considerations obviously shade into those determining whether the complaint states a sound basis for equitable relief; and even if we were inclined to consider the complaint as presenting an existing case or controversy, we would firmly disagree with the Court of Appeals that an adequate basis for equitable relief against petitioners had been stated. The Court has recently reaffirmed the "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger* v. *Harris,* 401 U. S. 37, 43–44 (1971). Additionally, recognition of the need for a proper balance in the concurrent operation of federal and state courts counsels restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is " 'both great and immediate.' " *Id.,* at 46. See, *e.g., Fenner* v. *Boykin,* 271 U. S. 240 (1926); *Douglas* v. *City of Jeannette,* 319 U. S. 157 (1943). In holding that 42 U. S. C. § 1983 is an Act of Congress that falls within the "expressly authorized" exception to the absolute bar against federal injunctions directed at state court proceedings provided by 28 U. S. C. § 2283, the Court expressly observed that it did not intend to "question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum* v. *Foster,* 407 U. S. 225, 243 (1972). Those principles preclude equitable intervention in the circumstances present here.

Respondents do not seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin any criminal prosecutions that might be brought under a challenged criminal law. In fact, respondents apparently contemplate that prosecutions will be brought under seemingly valid state laws. What they seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials. The order the Court of Appeals thought should be available if respondents proved their allegations would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* v. *Harris, supra,* and related cases sought to prevent.

A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable. In concluding that injunctive relief would be available in this case because it would not interfere with prosecutions to be commenced under challenged statutes, the Court of Appeals misconceived the underlying basis for withholding federal equitable relief when the normal course of criminal proceedings in the state courts would otherwise be disrupted. The objection is to unwarranted anticipatory interference in the state criminal process by means of continuous or piecemeal interruptions of the state proceedings by litigation in the federal courts; the object is to sustain "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Stefanelli* v. *Minard,* 342 U. S. 117,

120 (1951).[5]  See also *Cleary* v. *Bolger,* 371 U. S. 392
(1963); *Wilson* v. *Schnettler,* 365 U. S. 381 (1961);
*Pugach* v. *Dollinger,* 365 U. S. 458 (1961); cf. *Rea* v.
*United States,* 350 U. S. 214 (1956).   An injunction of
the type contemplated by respondents and the Court of
Appeals would disrupt the normal course of proceedings
in the state courts via resort to the federal suit for
determination of the claim *ab initio,* just as would the
request for injunctive relief from an ongoing state prose-
cution against the federal plaintiff which was found to be
unwarranted in *Younger.*   Moreover, it would require
for its enforcement the continuous supervision by the
federal court over the conduct of the petitioners in the
course of future criminal trial proceedings involving any
of the members of the respondents' broadly defined class.[6]
The Court of Appeals disclaimed any intention of requir-
ing the District Court to sit in constant day-to-day
supervision of these judicial officers, but the "periodic
reporting" system it thought might be warranted [7] would
constitute a form of monitoring of the operation of state
court functions that is antipathetic to established prin-
ciples of comity.   Cf. *Greenwood* v. *Peacock,* 384 U. S.
808 (1966).   Moreover, because an injunction against
acts which might occur in the course of future criminal
proceedings would necessarily impose continuing obliga-
tions of compliance, the question arises of how compliance
might be enforced if the beneficiaries of the injunction
were to charge that it had been disobeyed.   Presumably,
any member of respondents' class who appeared as an

---

[5] It was noted in *Stefanelli* that in suits brought under 42 U. S. C.
§ 1983 "we have withheld relief in equity even when recognizing
that comparable facts would create a cause of action for damages.
Compare *Giles* v. *Harris,* 189 U. S. 475, with *Lane* v. *Wilson,* 307
U. S. 268." 342 U. S., at 122.

[6] See n. 3, *supra.*

[7] See n. 1, *supra.*

accused before petitioners could allege and have adjudicated a claim that petitioners were in contempt of the federal court's injunction order, with review of adverse decisions in the Court of Appeals and, perhaps, in this Court. Apart from the inherent difficulties in defining the proper standards against which such claims might be measured, and the significant problems of proving noncompliance in individual cases, such a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized in the decisions previously noted.

Respondents have failed, moreover, to establish the basic requisites of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law. We have already canvassed the necessarily conjectural nature of the threatened injury to which respondents are allegedly subjected. And if any of the respondents are ever prosecuted and face trial, or if they are illegally sentenced, there are available state and federal procedures which could provide relief from the wrongful conduct alleged. Open to a victim of the discriminatory practices asserted under state law are the right to a substitution of judge or a change of venue, Ill. Rev. Stat., c. 38, §§ 114–5, 114–6 (1971), review on direct appeal or on postconviction collateral review, and the opportunity to demonstrate that the conduct of these judicial officers is so prejudicial to the administration of justice that available disciplinary proceedings, including the possibility of suspension or removal, are warranted. Ill. Const., Art. VI, § 15 (e). In appropriate circumstances, moreover, federal habeas relief would undoubtedly be available.

Nor is it true that unless the injunction sought is available federal law will exercise no deterrent effect in these circumstances. Judges who would willfully discriminate on the ground of race or otherwise would willfully deprive the citizen of his constitutional rights, as this complaint alleges, must take account of 18 U. S. C. § 242. See *Greenwood* v. *Peacock, supra,* at 830; *United States* v. *Price,* 383 U. S. 787, 793–794 (1966); *United States* v. *Guest,* 383 U. S. 745, 753–754 (1966); *Screws* v. *United States,* 325 U. S. 91, 101–106 (1945); *United States* v. *Classic,* 313 U. S. 299 (1941). Cf. *Monroe* v. *Pape,* 365 U. S. 167, 187 (1961). That section provides:

> "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined . . . or imprisoned . . . ."

Whatever may be the case with respect to civil liability generally, see *Pierson* v. *Ray,* 386 U. S. 547 (1967), or civil liability for willful corruption, see *Alzua* v. *Johnson,* 231 U. S. 106, 110–111 (1913); *Bradley* v. *Fisher,* 13 Wall. 335, 347, 350, 354 (1872), we have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivations of constitutional rights. Cf. *Ex parte Virginia,* 100 U. S. 339 (1880). On the contrary, the judicially fashioned doctrine of official immunity does not reach "so far as to immunize criminal conduct proscribed by an Act of Congress . . . ." *Gravel* v. *United States,* 408 U. S. 606, 627 (1972).

Considering the availability of other avenues of relief open to respondents for the serious conduct they assert, and the abrasive and unmanageable intercession which the injunctive relief they seek would represent, we conclude that, apart from the absence of an existing case or controversy presented by respondents for adjudication, the Court of Appeals erred in deciding that the District Court should entertain respondents' claim.

*Reversed.*

MR. JUSTICE BLACKMUN, concurring in part.

I join the judgment of the Court and Part I of the Court's opinion which holds that the complaint "failed to satisfy the threshold requirement imposed by Art. III of the Constitution that those who seek to invoke the power of federal courts must allege an actual case or controversy." *Ante,* at 493.

When we arrive at that conclusion, it follows, it seems to me, that we are precluded from considering any other issue presented for review. Thus, the Court's additional discussion of the question whether a case for equitable relief was stated amounts to an advisory opinion that we are powerless to render. *Hayburn's Case,* 2 Dall. 409 (1792); *United States* v. *Evans,* 213 U. S. 297, 301 (1909); *Muskrat* v. *United States,* 219 U. S. 346, 360–361 (1911); *Stearns* v. *Wood,* 236 U. S. 75 (1915); *Coffman* v. *Breeze Corps.,* 323 U. S. 316 (1945); *United Public Workers* v. *Mitchell,* 330 U. S. 75 (1947); *Paschall* v. *Christie-Stewart, Inc., ante,* at 101–102.

Mr. Justice Frankfurter stated the applicable principle in speaking for the Court in *International Longshoremen's & Warehousemen's Union* v. *Boyd,* 347 U. S. 222, 223 (1954):

"On this appeal, appellee contends that the District Court should not have reached the statutory and constitutional questions—that it should have

dismissed the suit for want of a 'case or controversy,' for lack of standing on the union's part to bring this action, . . . . Since the first objection is conclusive, there is an end of the matter."

I would adhere to that principle. Either there is no case or controversy and that is the end of the matter, or there is a case or controversy and the Court may go on to a decision on the merits. In my view, the Court may not have it both ways.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur, dissenting.

The respondents in this case are black and indigent citizens of Cairo, Illinois. Suing in federal court, they alleged that since the early 1960's black citizens of Cairo have been actively seeking equal opportunity and treatment in employment, housing, education, and ordinary day-to-day relations with the white citizens and officials of Cairo. In this quest, blacks have engaged in a boycott of local merchants deemed to have engaged in racial discrimination.

Alleging that this quest for equality has generated substantial antagonism from white governmental officials, respondents brought a class action under 42 U. S. C. §§ 1981, 1982, 1983, and 1985, seeking to represent citizens of Cairo who have been subjected in the past, and continue to be subjected, to the allegedly discriminatory and unconstitutional administration of criminal justice in Alexander County, Illinois, which includes Cairo. Among their other claims, respondents alleged that petitioners Michael O'Shea and Dorothy Spomer, both now judges in Alexander County,[1] engage in acts which deprive them and

---

[1] O'Shea, Magistrate of Alexander County Circuit Court when this suit was instituted, became an Associate Judge in the county on July 1, 1971.

members of their class of their constitutional rights. These judges allegedly set bond in criminal cases without regard to the facts of individual cases and as punishment, and not merely to assure the appearance of defendants at trial; impose higher sentences and harsher conditions of sentencing on black than on white citizens; and require respondents and members of their class, when charged with violations of city ordinances which carry fines and possible jail penalties, to pay for a trial by jury if the fine cannot be paid.

I

An injunction was sought against this conduct. The District Court referred obliquely to want of jurisdiction, but, focusing on the fact that the complaint sought review of matters of judicial discretion, concluded that the action should be dismissed because judges and magistrates are immune from liability for acts done in performance of their duties. In reversing and remanding the case to the District Court, the Court of Appeals held that the action was not barred by the doctrine of judicial immunity. The Court of Appeals also held that the complaint contained sufficiently specific factual averments to satisfy Fed. Rule Civ. Proc. 8 (a). 468 F. 2d 389.

This Court now decides for the first time in the course of this litigation that the complaint is deficient because it does not state a "case or controversy" within the meaning of Art. III.

The fact that no party has raised that issue in this closely contested case is no barrier, of course, to our consideration of it. But the reasoning and result reached by the Court are to say the least a *tour de force* and quite inconsistent with the allegations in the complaint, which are within constitutional requirements.

We know from the record and oral argument that Cairo, Illinois, is boiling with racial conflicts. This class action brought under 42 U. S. C. §§ 1981, 1982, 1983, and 1985 is to remedy vast invasions of civil rights. The Court, however, says that it is not a "case or controversy" because none of the named plaintiffs has alleged infringement of his rights and the fact that other members of the class may have been injured is not enough. As to the latter, *Bailey* v. *Patterson,* 369 U. S. 31, 32–33, is cited in support. But in *Bailey* the named persons were given standing to sue, the statement that "[t]hey cannot represent a class of whom they are not a part," *id.,* at 32–33, being dictum and its only authority being *McCabe* v. *Atchison, T. & S. F. R. Co.,* 235 U. S. 151, 162–163, which was not a class action. Nor was the question on which the case is made to turn resolved in *Indiana Employment Division* v. *Burney,* 409 U. S. 540. For we only held that where the named plaintiff had received relief and nothing appeared as to the relief, if any, granted to members of the class, the possible question of mootness should be resolved by the District Court. Even so, there were dissents. The upshot is that one crucial issue on which the Court makes this case turn has not been decided by the Court and was never argued here. At the very least we should have a full-dress argument on that point.

But I do not press the point, for the amended complaint is sufficiently specific to warrant a trial.

As respects O'Shea, the Magistrate, and Spomer, the Circuit Judge, the charges concerning *named plaintiffs* are as follows:

(1) that excessive bonds have been required in violation of the Eighth and Fourteenth Amendments because petitioners follow an unofficial bond schedule without regard to the facts of individual cases;

(2) on information and belief, that petitioners set higher sentences and impose harsher conditions for respondents and members of their class than for white persons;

(3) that, where the named plaintiffs have been fined and at times sentenced to jail and cannot pay the fines, these judges have required them to pay for a trial by jury.

Moreover, the amended complaint alleges that O'Shea and Spomer "continue to engage in a pattern and practice" which "has deprived and continues to deprive" the named plaintiffs and members of their class of their constitutional rights. Moreover, it is alleged that since early in the 1960's the blacks of Cairo and some whites have been actively and peaceably seeking to end discrimination in Cairo and that those activities have generated and continue to generate tension and antagonism in Cairo.

It is also alleged that the police commissioner in Cairo "has denied and continues to deny to plaintiffs and members of their class their constitutional rights in the following ways:

"(a) Defendant has made or caused to be made or cooperated in the making of arrests and the filing of charges against plaintiffs and members of their class where such charges are not warranted and are merely for the purpose of harassment and to discourage and prevent plaintiffs and their class from exercising their constitutional rights.

"(b) Defendant has made or caused to be made or cooperated in the making of arrests and the filing of charges against plaintiffs and members of their class where there may be some colorable basis to the arrest or charge, but the crime defined in the charge is much harsher than is warranted by the

facts and is far more severe than like charges would be against a white person."

These allegations support the likelihood that the named plaintiffs as well as members of their class will be arrested in the future and therefore will be brought before O'Shea and Spomer and be subjected to the alleged discriminatory practices in the administration of justice.

These allegations of past and continuing wrongdoings clearly state a case or controversy in the Art. III sense. They are as specific as those alleged in *Jenkins* v. *McKeithen,* 395 U. S. 411, and in *Doe* v. *Bolton,* 410 U. S. 179, where we held that cases or controversies were presented.

Specificity of proof may not be forthcoming; but specificity of charges is clear.

What has been alleged here is not only wrongs done to named plaintiffs, but a recurring pattern of wrongs which establishes, if proved, that the legal regime under control of the whites in Cairo, Illinois, is used over and over again to keep the blacks from exercising First Amendment rights, to discriminate against them, to keep from the blacks the protection of the law in their lawful activities, to weight the scales of justice repeatedly on the side of white prejudices and against black protests, fears, and suffering. This is a more pervasive scheme for suppression of blacks and their civil rights than I have ever seen. It may not survive a trial. But if this case does not present a "case or controversy" involving the named plaintiffs, then that concept has been so watered down as to be no longer recognizable. This will please the white superstructure, but it does violence to the conception of evenhanded justice envisioned by the Constitution.

Suits under 42 U. S. C. § 1983 are exceptions to the absolute bar against federal injunctions directed at state

court proceedings provided in 28 U. S. C. § 2283.[2] See *Mitchum* v. *Foster,* 407 U. S. 225. It will be much more appropriate to pass on the nature of any equitable relief to be granted after the case has been tried. It may be that when the case is ended, no injunction against any state proceeding will be asked for or will seem appropriate. Or the injunctive relief in final analysis may come down to very narrow and discrete orders prohibiting precise practices. The Court labels this an "ongoing federal audit of state criminal proceedings." That of course is a regime that we do not foster. But the Federal Constitution is supreme and if the power of the white power-structure in Cairo, Illinois, is so great as to disregard it, extraordinary relief is demanded. I would cross the bridge of remedies only when the precise contours of the problem have been established after a trial.

To repeat, in the instant case, there are allegations that state lower-court judges are willfully discriminating in their sentencing determinations and are imposing excessive bail. The effects of such results may well persist quite aside from the disposition of the underlying substantive charges at trial or on appeal, and may well be functionally unreviewable. The Court of Appeals observed, 468 F. 2d, at 408, that the individual defendant in a criminal case will find it difficult, if not impossible, to obtain review of a sentence within statutory limits unless it is manifestly harsh or unjustified, citing the Illinois rule that "imposition of sentence is a matter of judicial discretion, and in the absence of a manifest abuse of that discretion it will not be altered

---

[2] Title 28 U. S. C. § 2283 provides that:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

by a reviewing court." *People* v. *Bonner,* 37 Ill. 2d 553, 563, 229 N. E. 2d 527, 533 (1967), cert. denied, 392 U. S. 910 (1968).

Furthermore, the respondents do not primarily allege individual instances of excessively harsh treatment, on an absolute scale, of black and indigent defendants, but rather a pattern of discriminatory treatment, especially in favor of prosperous white defendants. Such allegations would amount to denials of equal protection even if blacks and poor whites were not subject to sentences which were so excessive that they constituted manifest abuses of discretion, as long as wealthy whites were at the same time receiving relatively lenient sentences from the same judges. A single instance of sentencing by itself might not strike the conscience of a reviewing court, but when coupled with a pattern of discriminatory treatment could well justify the equitable intervention of a federal court. A class suit where evidence could be developed showing a pattern of discriminatory bail and sentencing decisions by the petitioners would be the one appropriate vehicle in which these claims could be developed.

Whether respondents could come forward with such evidence, and whether the Federal District Court in the exercise of its equitable discretion could frame suitable relief are, of course, questions which can be answered only after a trial on the merits. The resolution of those issues would then be properly reviewable. But the principles of abstention and comity should not bar this suit *ab initio.*

## II

Because I believe that the complaint is sufficient to state an actual "case or controversy," I would reach the further question, on the merits, whether equitable relief may be warranted in the circumstances of this case. I agree, nonetheless, with my Brother BLACKMUN that the

Court's discussion in Part II of its opinion, whether a case for equitable relief was stated, is an advisory opinion since the Court has determined that there is no "case or controversy" in the Article III sense.

## APPENDIX TO OPINION OF DOUGLAS, J., DISSENTING

There are seven statutes in addition to 42 U. S. C. § 1983 which the Court has recognized constitute "express exceptions" to the policy of nonintervention in state proceedings enunciated by the anti-injunction statute: (1) The Bankruptcy Act, 11 U. S. C. § 1 *et seq.*, specifically recognized by Congress as an exception to 28 U. S. C. § 2283. See *Mitchum* v. *Foster*, 407 U. S. 225, 233. (2) The Interpleader Act of 1936, 28 U. S. C. § 2361, allowing federal courts to restrain prosecution of state court suits involving property involved in federal interpleader actions. See *Treinies* v. *Sunshine Mining Co.*, 308 U. S. 66, 74. (3) The 1851 Act limiting the liability of shipowners by providing for the cessation of proceedings against them when they have made a deposit equal to the value of their ships with a federal court, 46 U. S. C. § 185. See *Providence & N. Y. S. S. Co.* v. *Hill Mfg. Co.*, 109 U. S. 578, 599–600. (4) The Frazier-Lemke Farm Mortgage Act, 11 U. S. C. § 203 (s)(2) (1958 ed.). See *Kalb* v. *Feuerstein*, 308 U. S. 433. (5) The Federal Habeas Corpus Act, 28 U. S. C. § 2251, permitting a stay of state court proceedings when a federal habeas action is pending. See *Ex Parte Royall*, 117 U. S. 241, 248–249. (6) Section 205 (a) of the Emergency Price Control Act of 1942, 56 Stat. 33. See *Porter* v. *Dicken*, 328 U. S. 252, 255. (7) Legislation providing for the removal of litigation to federal courts and the simultaneous cessation of state court proceedings, 28 U. S. C. § 1446 (e). See *French* v. *Hay*, 22 Wall. 250.

This Court has also recognized the power of a federal court to stay proceedings in a state court to prevent relitigation of an issue already decided in a federal proceeding. See *Supreme Tribe of Ben-Hur* v. *Cauble,* 255 U. S. 356; *Julian* v. *Central Trust Co.,* 193 U. S. 93, 112. It has recognized the power of a federal court to enjoin state court proceedings to protect the jurisdiction which a federal court has already acquired over a *res.* See *Kline* v. *Burke Construction Co.,* 260 U. S. 226; *Toucey* v. *New York Life Ins. Co.,* 314 U. S. 118, 135–136. And we have found it proper for a federal court to directly enjoin state proceedings when the injunction was sought by either the United States, *Leiter Minerals, Inc.* v. *United States,* 352 U. S. 220, or by a federal agency asserting superior federal interests, see *NLRB* v. *Nash-Finch Co.,* 404 U. S. 138.