UNITED STATES of America, Plaintiff,

v.

PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO) et al., Defendants.

No. 80 C 4390.

United States District Court, N. D. Illinois, E. D.

Dec. 19, 1980.

Thomas P. Sullivan, U. S. Atty., Frederick H. Branding, Linda A. Wawzenski, Asst. U. S. Attys., Chicago, Ill., for plaintiff.

Gary Ethan Klein, Richard J. Leighton, Leighton, Conklin, Lemov & Jacobs, Washington, D. C., Harvey Nathan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

█ Defendants Professional Air Traffic Controllers Organization and its O'Hare Local 316 (though they are separate entities, for convenience this opinion will refer to them collectively by use of the singular term "PATCO"), Richard Scholz ("Scholz") and Thomas Brockett ("Brockett") have filed a Second Amended Counterclaim ("Counterclaim") for declaratory, injunctive and mandamus relief against plaintiff United States of America. On the motion of the United States, the Counterclaim is dismissed for lack of jurisdiction over the subject matter.[1]

*"Case or Controversy" and Standing*

█ Article III of the Constitution limits the power of federal courts to decision of "cases or controversies." That concept overlaps, though it does not coincide with, the doctrine of standing developed by the case law.[2] Defendants' counterclaim is wanting under either concept.

Essentially defendants assert in Counterclaim ¶ 7 that the Federal Aviation Administration ("FAA") has promulgated "written procedures governing the safety and control of air traffic throughout the United States.... [that] have been adopted and collected in an Air Traffic Control Handbook, FAA Order 7110.65 B (1980) (Handbook)." Those procedures relate "primarily to the separation of aircraft in and above all airport facilities in the United States." But, defendants complain in Counterclaim ¶ 9:

> For a number of years, air traffic controllers at O'Hare terminal have been encouraged, ordered and/or forced by their FAA supervisors to disregard mandatory separation Handbook provisions. O'Hare terminal FAA supervisors routinely condone, instruct and/or affirmatively sanction numerous violations of the Handbook.

1. This Court has just, on PATCO's motion, dismissed the Complaint by the United States for lack of jurisdiction. That decision eliminates any possible argument that the Counterclaim could stand as a compulsory counterclaim under Fed.R.Civ.P. 13(a), thereby conferring jurisdiction on this Court despite flaws the Counterclaim itself might have as a federal cause of action. Moreover, the reason for dismissal of the Complaint (exclusive jurisdiction of the Federal Labor Relations Authority ("FLRA")) impacts on the claims made by defendants in the Counterclaim. In order to determine whether the alleged "slowdown" by air traffic controllers at O'Hare Field is an unfair labor practice, FLRA will be required to determine whether the very matters defendants complain of in the Counterclaim justified defendants in taking the actions that the United States challenges as wrongful. Accordingly there is the additional point that notions of primary jurisdiction would call for this Court, if it *had* jurisdiction over the Counterclaim, at least to defer action pending the FLRA decision.

2. As the Supreme Court said in *Ass'n of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970):

> The question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to cases and controversies.

As their claimed means of entry into this Court, defendants assert in Counterclaim ¶¶ 12, 14 and 16 the following consequences of what they term "FAA's disregard of its Handbook":

(1) possible reprimand, suspension or removal of air controllers for failing to "observe the various laws, rules, regulations, and other authoritative instructions brought to his attention by competent FAA authority" (quoting from the Conduct and Discipline Section of a 1969 FAA Order);

(2) possible "severe financial sanctions resulting from civil negligence in wrongful death actions brought by crash victims" against air traffic controllers "who work below the minimum Handbook standards";

(3) "discipline and harassment potentials" faced by controllers who are also "faced with orders and encouragement to violate the separation requirements";

(4) "reprimands, suspensions, removals and criminal penalties [that] await controllers who engage in an improper slowdown or strike"; [3]

(5) "severe physical, emotional and psychological stress of air controllers" resulting from "uncertainty in terms of job security and personal financial well-being created by such dilemmas"; and

(6) PATCO's potential "decertification as the exclusive bargaining representatives of air traffic controllers in negotiations with the FAA if they condone an illegal slowdown" in the form of "compliance with the Handbook separation requirements." [4]

■ There is no question that defendants and the United States have some difference in their views of the responsibilities of air traffic controllers—a "controversy" in the colloquial sense of the word. And were the

disagreement on the opposite side of the coin—were FAA *requiring* the controllers to comply with Handbook procedures on threat of discipline, while the controllers were challenging such enforcement for any reason—the parties would have a "controversy" in the constitutional sense as well.

But that constitutional sense is a specialized one, as described in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 229, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937):

A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

There has been no change in the basic Constitutional interpretation in this area since *Aetna*. It still requires a current real threat of harm arising from the parties' dispute and not an excursion "into the area of speculation and conjecture." *O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974).

No such situation is involved here. Defendants speak of "possible reprimand, suspension or removal"—yet no *actual* threat of any such discipline is asserted, and the very gravamen of defendants' basic complaint wholly belies that possibility because it stems from FAA's alleged *disregard* and *violation* (not enforcement) of the Handbook's provisions. Defendants speak of "severe financial sanctions resulting from civil negligence and wrongful death actions" confronting controllers—yet there is nothing to indicate that this is a venture outside of "the area of speculation and conjecture,"

---

3. This component of defendants' claim poses the very issue that this Court has just held, on *defendants'* motion, is within the exclusive jurisdiction of FLRA. Defendants will not now be heard to urge this Court's jurisdiction over

their Counterclaim on identical grounds. See also item (6) below.

4. This claim presents the same problem for defendants as noted in footnote 3.

as *O'Shea* put it.[5] Defendants speak of "severe physical, emotional and psychological stress"—yet those traumas are claimed to stem from "uncertainty in terms of job security and personal financial well-being created by such dilemmas," which in turn are based on the same non-existent threats referred to earlier in this paragraph. It is not necessary to extend the parsing of defendants' claims, for each obviously suffers from the same speculative and hypothetical characteristics.

As the Supreme Court put it in *United States v. Scrap*, 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1972):

> Pleadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action.

But the "challenged agency action" in this case is FAA's alleged *failure* to enforce the Handbook's provisions, and there is no showing that such failure has harmed or will in fact perceptibly harm any of the defendants here.

■ Thus defendants assert nothing more than speculative and hypothetical harms that do not rise to the level of "controversy" in the justiciable sense of the term. On the closely related subject of standing, it is necessary that a complaining party be able to demonstrate injury to a legally protected interest (*Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940)). Even though an association such as PATCO may have standing as the representative of its members, *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975), that standing requires injury on the part of the members sufficient for individual standing, *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Here there is no allegation that any member of either PATCO union or either of the individual counterclaimants (or indeed anyone else) has suffered any of the hypothetical harms posed in the Counterclaim. On that score too, then, the Counterclaim is fatally deficient.

### Conclusion

■ Defendants' Second Amended Counterclaim fails to surmount the threshold requirements for federal jurisdiction: the existence of a "case or controversy" in the Article III sense, and parties having standing to assert a valid claim.[6] Accordingly, the Second Amended Counterclaim is dismissed for want of jurisdiction over the subject matter.[7] This action being terminated, the existing TRO is dissolved as a matter of law.

---

5. This claim must be read against the backdrop of the Federal Tort Claims Procedure Act, 28 U.S.C. §§ 2671–80, under which the United States is liable for the negligence of government employees. Even in the unlikely event (again speculation rather than fact) of suit against a controller individually rather than against the United States, potential liability must be viewed in light of defendants' own claim that noncompliance with Handbook standards is *forced* by FAA supervisors. Possible suits against the United States (28 U.S.C. § 1346(b)) alone or jointly with a controller would bar judgment against the individual under 28 U.S.C. § 2676. But once more the controlling jurisdictional issue is that we are dealing with the purely hypothetical, rather than a real, controversy.

6. Several other grounds have been asserted by the United States as a basis for dismissal: lack *of jurisdiction under 28 U.S.C.* §§ 1331 and 1361 and failure to exhaust administrative remedies. Though those arguments appear to have substantial force, it is unnecessary for the Court to reach those issues.

7. This decision moots the recently-filed motion of the Air Transport Association for leave to intervene with respect to the counterclaim, as well as other previously-pending procedural motions. Accordingly the previously-set status date of December 29, 1980 and trial date of January 19, 1981 are hereby vacated.