Carlos **GARY**, Plaintiff,

v.

D. **AGUSTINI & ASOCIADOS, S.A.,** Hallmark Cruise Services, Inc., Stellar Cruise Services, Ltd., and Stellar Maritime Services, Inc., Defendants.

No. 94–0325–Civ.

United States District Court, S.D. Florida.

Aug. 22, 1995.

Sharon L. Wolfe, Charles R. Lipcon, Miami, FL, for plaintiff.

D. Agustini & Asociados, S.A., Peter W. Homer, Lorelei J. Van Wey, Greer, Homer & Bonner, P.A., Miami, FL, Hallmark Cruise Services, Inc. and Stellar Cruise Services, Ltd., George O. Mitchell, Bruce R. Marx, Mitchell, McAlpin & Associates, P.A., Miami, FL, for defendants.

### ORDER ON PENDING MOTIONS

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon the following motions:

(1) Defendant D. Agustini & Asociados, S.A.'s ("Agustini") motion to dismiss the second amended complaint (D.E. # 71);

(2) Defendants Stellar Cruise Services, Ltd. ("Stellar") and Hallmark Cruise Services, Inc.'s ("Hallmark") motion to dismiss the second amended complaint (D.E. # 63);

(3) Plaintiff Carlos Gary's motion to allow time for discovery with respect to the second amended complaint on the issues of service of process and activities within the State of Florida (D.E. # 74);

(4) Plaintiff Gary's motion for extension of time to file memorandum in opposition to Stellar's and Agustini's arguments on service of process and jurisdiction (D.E. # 81); and

(5) Plaintiff Gary's motion to compel discovery (D.E. # 94).

For the reasons stated below, the Court grants in part the defendants' motions to dismiss the second amended complaint, without prejudice. The remaining motions are denied as moot.

## PROCEDURAL AND FACTUAL BACKGROUND

On October 27, 1994, Plaintiff Carlos Gary filed his second amended seaman's class action complaint, invoking this Court's admiralty and maritime jurisdiction. Gary asserts that he is a seaman within the meaning of 28 U.S.C. § 1916, which entitles a seaman to commence an action in federal court without prepayment of costs. According to Gary, the defendants are maritime employers engaged in the business of supplying crew members, such as himself, to passenger vessels that sail in the United States and international waters.

As the basis for this action, Gary alleges that he was required to pay an illegal fee of $450 to one or more of the defendants for an employment letter, prior to obtaining a position as utility man aboard the cruise ship Regent Rainbow, in violation of 46 U.S.C. § 10314(b). The second amended complaint states that the Regent Rainbow sails out of Tampa, Florida; that the vessel is registered in a foreign country, believed to be the Bahamas; that the vessel is believed to be operated by a Bermuda company; that, at the time the action arose, the vessel was docked within the waters of the United States; and that all acts described in the second amended complaint occurred in whole or in part in this county and/or state. The second amended complaint, like its predecessor amended complaint, fails to state *where* Gary made the allegedly illegal payment of $450 to the defendants.

The second amended class action complaint is in two counts. Count I seeks restitution at law of money procured by an unlawful activity, namely, the $450 employment fee allegedly made in violation of 46 U.S.C. § 10314(b). Count II asserts an alternative claim for equitable restitution based on unjust enrichment arising from the allegedly illegal payment. According to Gary, the potential class members include all crew members employed by the defendants who were illegally charged money to obtain an employment letter in the three years prior to the commencement of this action. Gary estimates the class size to exceed 2,500 persons.

■ Defendant Agustini seeks dismissal of the second amended complaint on the following grounds: failure to state a claim upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6); insufficiency of service of process, pursuant to Fed.R.Civ.P. 12(b)(5); and lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). Agustini also seeks dismissal of Gary's claim for attorney's fees. Defendants Stellar and Hallmark have moved for dismissal on the following grounds: failure to state a claim upon which relief can be granted as to all claims, including the claim for attorney's fees, pursuant to Fed.R.Civ.P. 12(b)(6); and insufficiency of process and/or insufficiency of service of process as to Stellar, pursuant to Fed.R.Civ.P. 12(b)(4) and (5). In addition, all three defendants challenge the sufficiency of Gary's pleading as a class action complaint, within the meaning of Fed.R.Civ.P. 23. Although Gary has styled his second amended complaint as a class action complaint, he has not yet moved for determination regarding whether a class action may be maintained, pursuant to Fed.R.Civ.P. 23(c)(1) and Local Rule 23.1(A)(3). Therefore, the Court will consider the second amended complaint only in terms of Gary's individual claims and defer consideration of the sufficiency of the second amended complaint as a class action complaint.[1]

---

1. The Court would lack subject matter jurisdiction to consider any claims which Gary cannot assert on his own behalf. *See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defen-

dants, none may seek relief on behalf of himself or any other member of the class."). *See also Lynch v. Baxley,* 744 F.2d 1452, 1456 (11th Cir. 1984) ("If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class."); *Britt v. McKenney,* 529

## DISCUSSION

By order dated October 7, 1994, the Court addressed the defendants' motions to dismiss the amended complaint. In that order, the Court dismissed with prejudice Gary's claims for violation of 46 U.S.C. § 10314(b) and for conspiracy to violate section 10314(b), finding that the statute does not afford seamen a private right of action. The Court also dismissed with prejudice Gary's conversion claim, by operation of Florida's economic loss rule. With respect to Gary's remaining claim for unjust enrichment, the Court found that Gary had failed to state a claim for this cause of action. The Court also noted that Gary had not properly pled the applicability of section 10314(b) in his amended complaint, but found an indication in Gary's response to the motions to dismiss that he would be able to cure this defect. Accordingly, in an abundance of caution, the Court granted Gary leave to file an amended pleading.

In his second amended complaint, Gary seeks restitution at law or, in the alternative, equitable restitution of the employment fee allegedly paid by him and rendered illegal by operation of section 10314(b). Thus, Gary's action is still predicated on the applicability of section 10314(b) to his case.

Title 46, United States Code, Section 10314 provides, in pertinent part:

(a)(1) A person may not—

(A) pay a seaman wages in advance of the time when the seaman has earned the wages;

(B) pay advance wages of the seaman to another person; or

(C) make to another person an order, note, or other evidence of indebtedness of the wages, or pay another person, for the engagement of seamen when payment is deducted or to be deducted from the seaman's wage.

(2) a person violating this subsection is liable to the United States Government for a civil penalty of not more than $500. A payment made in violation of this subsec-

tion does not relieve the vessel or the master from the duty to pay all wages after they have been earned.

(b) A person demanding or receiving from a seaman or an individual seeking employment as a seaman, remuneration for providing the seaman or individual with employment, is liable to the Government for a civil penalty of not more than $500.·

(c) This section applies to a foreign vessel when in waters of the United States. An owner, charterer, managing operator, agent, or master of a foreign vessel violating this section is liable to the Government for the same penalty as an owner, charterer, managing operator, agent, or master of a vessel of the United States for the same violation.

46 U.S.C.A. § 10314 (West Pamphlet 1995).

In the second amended complaint, Gary alleges that the vessel on which he sought employment, the Regent Rainbow, is registered in a foreign country. By its terms, section 10314 only applies to foreign vessels, "when in waters of the United States." The Court has not been able to locate cases that address the jurisdictional issue with respect to section 10314(b). The Court, however, has reviewed cases addressing the issue with respect to section 10314(a), which prohibits advance wage payments to seamen, and finds such cases instructive.

In *Patterson v. The Eudora*, 190 U.S. 169, 23 S.Ct. 821, 47 L.Ed. 1002 (1903), the United States Supreme Court addressed the question "whether the provisions of the statute prohibiting advance payment of wages to seamen were applicable to seamen shipping in a port of the United States on a foreign vessel, and whether, if so applicable, the statute was valid." The seamen in that case had shipped on the British bark Eudora from Portland, Maine for a voyage to Rio and other points. At the time of shipment, twenty dollars were withheld from each of their wages and paid to the shipping agent through whom they were employed. The

---

F.2d 44, 45 (1st Cir.), *cert. denied sub nom Burden v. McKenney*, 429 U.S. 854, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976) ("If none of the named plaintiffs may maintain this action on their own behalf, they may not seek such relief on behalf of a

class."); *Salgado v. Piedmont Capital Corp.*, 534 F.Supp. 938, 953 (D.P.R.1981) ("It is well settled that to be a representative of the class on a particular claim, the plaintiff must himself have a cause of action on that claim.").

Supreme Court found that the statute in question, which was the predecessor of section 10314(a), was both applicable and valid. The Court noted, based on the stipulated facts, that "the seamen were engaged in the presence of the British vice consul at the port of New York," and concluded that "the wrongful acts were done on the territory and within the jurisdiction of the United States." *Id.* at 176, 23 S.Ct. at 823.

Fifteen years later, in *Sandberg v. Mc-Donald,* 248 U.S. 185, 39 S.Ct. 84, 63 L.Ed. 200 (1918), the United States Supreme Court considered the applicability of the statute to a different factual scenario. The case involved the Talus, a British ship, and seamen who were citizens or subjects of nations other than the United States. Before boarding the Talus at Dublin, Ireland, the seamen "received certain advances at Liverpool by the ship or its agents, a practice usual and customary and not forbidden by the laws of Great Britain." *Id.* at 191, 39 S.Ct. at 84. The ship sailed from Dublin to Mobile, Alabama, where the seamen demanded payment of one-half of the wages earned to date, without deduction of the advances made at Liverpool. The Supreme Court noted that the statute prohibiting the payment of advance wages was designed to protect seamen "against a class of persons who took advantage of their necessities and through whom vessels were obliged to provide themselves with seamen. These persons obtained assignments of the advanced wages of sailors. In many instances this was accomplished with little or no service to the men who were obliged to obtain employment through such agencies." *Id.* at 193–94, 39 S.Ct. at 85. The Supreme Court found, nevertheless, that nothing in the statute indicated an intent to control these matters "otherwise than in ports of the United States." *Id.* at 195, 39 S.Ct. at 86. Hence, the statute was found inapplicable to the advancement of wages in a foreign port, where a foreign vessel was involved.

On the same day that it issued the *Sandberg* opinion, the United States Supreme Court considered a closely related question, namely, whether the wage advance statute applied to an American vessel in a foreign

port. In *Neilson v. Rhine Shipping Co.,* 248 U.S. 205, 39 S.Ct. 89, 63 L.Ed. 208 (1918), the seamen seeking to recover illegally withheld wages had shipped on the American bark Rhine at "Buenos Ayres" for a voyage to New York, at a rate of pay of $25 per month. *Id.* at 211, 39 S.Ct. at 90. According to the stipulated facts, "the shipping of seamen on sailing vessels at Buenos Ayres is controlled by certain shipping masters, to one of whom the libelants, in accordance with the usual custom and as a means of securing employment, signed a receipt or advance note for one month's wages. These advance notes were presented to the American Vice–Consul at Buenos Ayres before the libelants signed the articles, were by him noted on the articles and, in the presence of the libelants, directed to be paid on account of the wages of the respective libelants." *Id.* at 211–12, 39 S.Ct. at 90. The Supreme Court noted that the only difference between this case and the case involving the ship Talus, decided on the same day, was that in this case "the advances were made by the master of an American vessel in a South American port, where in The Talus the advancements were made to foreign seamen in a British port." *Id.* at 212, 39 S.Ct. at 90. The Court did not find that difference determinative, concluding that the prohibition against wage advances could only apply in domestic ports, and not in foreign ports, even when the vessel involved was an American vessel.

A decade after the *Sandberg* and *Rhine* opinions were issued, the Supreme Court considered the applicability of the wage advance statute to a foreign vessel in a foreign port, after the statute had been amended to include advances "whether made within or without the United States or territory subject to the jurisdiction thereof." *Jackson v. The Archimedes,* 275 U.S. 463, 469, 48 S.Ct. 164, 166, 72 L.Ed. 374 (1928). The case involved British seamen who had shipped at Manchester, England, on the British vessel, The Archimedes, for a round trip voyage to and from New York. "When they signed the shipping articles they received advances on account of wages, which were customary and sanctioned by British law." *Id.* at 464–65, 48 S.Ct. at 164. Upon their arrival in New York, the seamen demanded one-half the

wages earned to date, disregarding the advances made in England. The Supreme Court found no intention in the amendment to extend the provisions of the statute to advance payments "made by foreign vessels while in foreign ports." *Id.* at 470, 48 S.Ct. at 166. The amendment was to be given full effect only when applied to American vessels. *Id.*

In relatively more recent times, the Fourth Circuit reasserted the principle established by the Supreme Court in *Patterson v. The Eudora,* finding that the wage advance statute applies to advances made in U.S. ports to foreign seamen serving on foreign ships. *Heros v. Cockinos,* 177 F.2d 570 (4th Cir. 1949). In that case, eleven Greek seamen signed on the Greek vessel Eugenia Chandris. All except three of the seamen were employed on the vessel in ports of the United States and were paid advances on unearned wages at the time of their employment. The eleven seamen were discharged in Barcelona, Spain, prior to the vessel's return to the United States. Upon their return, they brought suit in Newport News, Virginia, to collect their wages. In response to the suit, the vessel's master paid into the court's registry the wages due, less advances made at the time of shipment. The Fourth Circuit found that the wage advance statute was applicable, even though a foreign vessel and foreign seamen were involved, since the advances and settlements were both made in the United States.

Finally, in *Stavridis v. CIA Panamena Europa Navegacion Ltda.,* 90 F.Supp. 187 (S.D.N.Y.1950), the Southern District of New York found the wage advance statute applicable to a slight variation of the *Heros* scenario. In *Stavridis,* an alien seaman was employed to serve aboard a Panamanian vessel for a round voyage commencing and ending in the United States. The contract of employment was made at Norfolk, Virginia, at which time the seaman received a wage advance of $130. The seaman was paid his earned wages in Genoa, Italy, from which the $130 advance was deducted, and left the vessel prior to its return to the United States. The court found that the place where the wage deduction had occurred bore no signifi-

cance for purposes of the wage advance statute. The court found the statute applicable because the advance was made in the United States, and the voyage began in the United States and was intended to terminate in the United States.

■ The Court has discussed the foregoing cases in some detail to emphasize that, for purposes of section 10314(a), the place where the advance wage payment is made is critical in determining the statute's applicability. Moreover, a general rule may be drawn from the cases discussed that section 10314(a) does not apply to advances made to seamen in foreign ports, for service on foreign vessels, but applies to advances made in American ports. Using this standard as a guide leads to the parallel rule that section 10314(b) does not apply to the payment of employments fee by seamen in foreign ports, for service on foreign vessels, but applies to payments made in American ports.

■ As previously noted, Gary fails to state the critical jurisdictional fact of where the allegedly illegal employment fee payment was made. Gary asserts that the vessel where he sought employment, the Regent Rainbow, is a foreign vessel which sails out of Tampa, Florida. Gary further alleges that, at the time this action arose, the vessel was docked within the waters of the United States; and that all acts described in the second amended complaint occurred in whole or in part in this county and/or state. Such ambiguous statements, however, do not provide a sufficient predicate for determining the applicability of section 10314(b). Thus, Gary has, once again, failed to properly plead the applicability of section 10314(b) to this case. Because Gary's common law claims are predicated on section 10314(b), the Court concludes that the claims must be dismissed for failure to state a claim upon which relief can be granted. The Court will allow Gary one additional opportunity to plead, with the specificity shown in the cases discussed above, the jurisdictional facts that would make section 10314(b) applicable to this case. A third amended complaint will not be considered unless it specifically states *where* the allegedly illegal payment was made.

*CONCLUSION*

Based on the foregoing considerations, it is hereby

ORDERED AND ADJUDGED as follows:

(1) Defendant D. Agustini & Asociados, S.A.'s ("Agustini") motion to dismiss the second amended complaint (D.E. # 71) is GRANTED IN PART. The complaint is DISMISSED without prejudice for failure to state a claim upon which relief can be granted. The motion to dismiss is DENIED without prejudice in all other respects, as moot.

(2) Defendants Stellar Cruise Services, Ltd. ("Stellar") and Hallmark Cruise Services, Inc.'s ("Hallmark") motion to dismiss the second amended complaint (D.E. # 63) is GRANTED IN PART. The complaint is DISMISSED without prejudice for failure to state a claim upon which relief can be granted. The motion to dismiss is DENIED without prejudice in all other respects, as moot.

(3) Plaintiff Carlos Gary's motion to allow time for discovery (D.E. # 74) is DENIED without prejudice, as moot.

(4) Plaintiff Gary's motion to extend time to file memorandum in opposition to Stellar's and Agustini's argument on service of process and jurisdiction (D.E. # 81) is DENIED without prejudice, as moot.

(5) Plaintiff Gary's motion to compel discovery (D.E. # 94) is DENIED without prejudice, as moot.

(6) Gary has twenty days from the date of this order to file a third amended complaint. Failure to allege with specificity the jurisdictional facts required for applicability of section 10314(b) to this action, as discussed above, shall result in the Court's sua sponte dismissal of the third amended complaint, with prejudice.

DONE AND ORDERED.