**John LEOPOLD, Plaintiff,**

v.

**John F. O'LEARY, Individually and as Administrator of the Federal Energy Administration, Defendant.**

**Civ. No. 77–0150.**

United States District Court,
D. Hawaii.

Sept. 28, 1978.

Edward C. Kemper, Kemper & Watts, Honolulu, Hawaii, for plaintiff.

Barbara L. Gordon, Atty., Civil Div., Walter M. Heen, U. S. Atty., District of Hawaii, Honolulu, Hawaii, Barbara Allen Babcock, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendant.

## DECISION ON MOTION TO DISMISS

### FACTS

SAMUEL P. KING, Chief Judge.

Hawaii State Senator John Leopold is suing John F. O'Leary, individually and as Administrator of the Federal Energy Administration, for declaratory relief and to enjoin the implementation of the Strategic Petroleum Reserve Plan as violative of its enabling statute [The Energy Policy and Conservation Act, 42 U.S.C. §§ 6231, 6234(d), 6237.] Plaintiff alleges that the Plan does not provide for rapid delivery of oil supplies to Hawaii in times of emergency and that, without imported oil for even a short time, there would be crippling effects on Hawaii's people and economy. Plaintiff alleges that he will be damaged because: (1) he is solely dependent upon electrical energy generated from imported oil to operate his home; and (2) he depends solely upon imported oil to operate his car. Plaintiff prays for an order directing the defendant to provide for the storage of oil in Hawaii sufficient for Hawaii's needs.

Defendant moved to dismiss this action on the grounds that the plaintiff lacks standing to sue as either (1) a state legislator or (2) a citizen of Hawaii. Although I disagree with the defendant's contention that the plaintiff lacks standing to bring this suit, this action nevertheless does not satisfy the Article III "case or controversy" requirement at this time and must be dismissed for lack of ripeness.

### STANDING

Standing to sue is an initial consideration for the Court which must be addressed before the merits of the alleged controversy are decided. *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). To meet this jurisdictional prerequisite, the plaintiff must show that he has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). "Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.'" *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (quoting *Linda R. S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)) (footnote omitted).

Although plaintiff is a State Senator of Hawaii, this fact does not confer

standing to sue in this instance. A legislator has no special right to standing simply by virtue of that status. *See Metcalf v. National Petroleum Council,* 180 U.S.App. D.C. 31, 553 F.2d 176 (1977); *Harrington v. Bush,* 180 U.S.App.D.C. 45, 553 F.2d 190 (1977); *Korioth v. Briscoe,* 523 F.2d 1271, 1275 (5th Cir. 1975). In certain circumstances, a legislator, in his official capacity, may have standing to challenge official actions. *E. g., Coleman v. Miller,* 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), *Kennedy v. Sampson,* 167 U.S.App.D.C. 192, 511 F.2d 430 (1974) [challenged action undermined the effectiveness of his legislative vote]; *Mitchell v. Laird,* 159 U.S.App.D.C. 344, 346, 488 F.2d 611, 613 (1973) [legislator has a duty to investigate the acts of the executive in relation to possible impeachment]. Plaintiff has not alleged that the effectiveness of his vote, or any other legislative power he has, has been impeded or will be impeded by the implementation of this Plan, nor has any question of impeachment been raised. Thus, plaintiff has no standing as a state legislator to bring this action.

The defendant then argued that plaintiff did not have standing as a citizen of Hawaii. The Government noted that "standing to sue may not be predicated upon an interest . . . which is held in common by all members of the public . . . ." *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 220, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706 (1974). The Government then contended that plaintiff had no standing because his claimed injury, the anticipated lack of fuel to operate his car, home appliances and lights, is clearly a generalized grievance undifferentiated from any injury which the other citizens of the State of Hawaii may suffer during an oil shortage.

■ The Government's argument is without merit because it relies on cases which deny standing to plaintiffs who are injured, if at all, to the same extent as all United States citizens and not a subgroup thereof such as the citizens of a state. *E. g.,*

*Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) [Plaintiffs brought a class action on behalf of all U.S. citizens challenging the Reserve membership of Members of Congress as violating the Incompatibility Clause of the Constitution, Art. I § 6 cl. 2]; *Ex Parte Levitt,* 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937) [a suit challenging the appointment of a Supreme Court Justice as violative of the Incompatibility Clause]; *Korioth v. Briscoe,* 523 F.2d 1271 (5th Cir. 1975) [a suit by a state legislator challenging the establishment by the Texas government of a regional planning agency as violative of the U.S. Constitution's proscription against states entering into treaties with foreign countries]. The Government also relied on cases that deal with taxpayer standing to support this contention. *E. g., United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1973); *Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). These cases are inapposite in the context of the instant case. The Government failed to cite any authority for the denial of standing to a member of a group which is approximately the size of citizens of a State simply because of its size.

The plaintiff cites a different line of cases with the proper test in this context. In *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), five law students, through an unincorporated association, attempted to enjoin the Interstate Commerce Commission from permitting railroads to collect an increase in rates because it would injure their aesthetic and environmental well-being. The Court held that they had standing in this case. "[T]he fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." *Id.* at 686, 93 S.Ct. at 2415 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) [In *Sierra Club, supra,* the Court denied standing because no claim was made that any members of the

Club had been injured, and *not* because of the large membership of the Club.][1]

Thus, although the similarity of plaintiff's interests in this situation with those of other Hawaii residents may warrant the institution of a class action, it does not justify a denial of standing to the plaintiff.

## RIPENESS

Interspersed throughout its lack of standing argument, the Government also made an argument for dismissal that actually comes under the rubric of ripeness. The Government contended that it is impossible to know whether the implementation of the Strategic Petroleum Reserve Plan as presently formulated will result in the lack of oil anticipated by plaintiff in his complaint. The Government argued that since the occurrence of the asserted harm is speculative and conjectural, the plaintiff lacks standing because the challenged acts have not caused him "injury in fact, economic or otherwise" as required by *Association Data Processing Organizations v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) and *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

This argument raised by the Government for dismissal is valid as a ripeness argument. In *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), plaintiffs contended that their First Amendment rights were chilled by the existence of a data gathering system which allegedly could lead to the undertaking by defendants of an unconstitutional surveillance scheme. The Supreme Court noted that in order for "a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that *he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action* . . . ." *Id.* at 13, 92 S.Ct. at 2325 (quoting *Ex Parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937)) (emphasis supplied). The Court held that the *Laird* plaintiffs had not established

a record which disclosed the showing of *"specific present objective harm or a threat of specific future harm* . . . ." *Id.* 408 U.S. at 14, 92 S.Ct. at 2326 (emphasis supplied)

In *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1973), plaintiffs sought to enjoin certain state judicial officers from engaging in a continuing pattern of discriminatory conduct, alleging a future denial of constitutional rights. The Court held that this action did not satisfy the Article III "case or controversy" requirement. "[W]e doubt that there is *'sufficient immediacy and reality'* to respondents' allegations of future injury to warrant invocation of the jurisdiction of the District Court." *Id.* at 497, 94 S.Ct. at 677 (emphasis supplied); *see United Public Workers v. Mitchell,* 330 U.S. 75, 86–91, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

■ Although plaintiff may suffer an "injury in fact" at some future time if all his fears are realized, plaintiff's allegations are too speculative at this time to warrant invocation of the jurisdiction of this Court. "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). The allegations of injury by the plaintiff, however, lack "sufficient immediacy or reality . . . ." *O'Shea v. Littleton, supra,* 414 U.S. at 497, 94 S.Ct. 669. First, the possibility or likelihood of an oil shortage due to an Arab embargo is purely speculative. Second, even if such an embargo occurs at some future time, it is unclear what the status of energy sources at that time will be and whether or not plaintiff would still suffer any harm as he might suffer if such an embargo occurred tomorrow. Third, even if an embargo did occur and the plaintiff still relied on oil for

---

1. The Government, relying on *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), also argued that standing should be denied because this Court would be unable to fashion an appropriate remedy in this instance. This argument is totally without merit.

energy did at that time, it is unclear whether the Plan as presently formulated would fail to satisfy the needs of the State of Hawaii in the event of the interruption of oil shipments. Finally, even if this Plan as presently formulated would not satisfy the needs of Hawaii in the event of an oil embargo, there may be future revisions and amendments to this Plan prior to any future oil embargo which will make the Plan more responsive to Hawaii's needs. Of course, if future events are such that plaintiff sustains or "is immediately in danger of sustaining a direct injury" as a result of the actions of the defendant, plaintiff will not be foreclosed from bringing a new action at that time. Nevertheless, plaintiff "has failed to show the existence of any injury . . . of sufficient immediacy and ripeness to warrant judicial intervention" at this time. *Warth v. Seldin,* 422 U.S. 490, 516, 95 S.Ct. 2197, 2214, 45 L.Ed.2d 343 (1975). For this reason, the motion to dismiss must be granted.