# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 22, 2011

No. 09-30832

Lyle W. Cayce
Clerk

In the Matter of:  DOROTHY CHASE STEWART

Debtor

WELLS FARGO BANK, N.A.

Appellant

v.

DOROTHY CHASE STEWART

Appellee

In the Matter of: IRBY FITCH; BRITTANY FITCH

Debtors

WELLS FARGO BANK, N.A., doing business as, America's Servicing
Company

Appellant

v.

IRBY FITCH; BRITTANY FITCH

Appellees

No. 09-30832

———————————

Appeals from the United States District Court
for the Eastern District of Louisiana

———————————

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

When elderly widow Dorothy Chase Stewart filed for bankruptcy in 2007, Wells Fargo Bank filed a proof of claim with the bankruptcy court reciting debts owed from an outstanding mortgage on Ms. Stewart's house. From her limited funds, Ms. Stewart hired a lawyer to request a full accounting of Wells Fargo's charges.

Wells Fargo did not cooperate. It provided a list of charges by type, but without the amount, date, or payee for each charge, and without invoices or proofs of payment for the third-party fees it charged to Ms. Stewart. At a hearing convened by the bankruptcy court, Wells Fargo sent lawyers unfamiliar with her case and unable to provide further information or documentation. As the hearing went on, "errors in billing became evident."[1]

Two further hearings and four months of research passed before the bankruptcy court was able to unravel Wells Fargo's accounting.[2] After Ms. Stewart's attorney "painstakingly identified the additional information needed, or explanations required" to review the claim,[3] Wells Fargo finally produced a

---

[1] *In re Stewart* (*Stewart I*), 391 B.R. 327, 331 (Bankr. E.D. La. 2008), *aff'd*, 2009 WL 2448054 (E.D. La. Aug. 7, 2009).

[2] *See id.* at 355; *see also In re Jones*, 366 B.R. 584, 591–92 (Bankr. E.D. La. 2007) (describing another proof of claim as "such a tangled mess that neither Debtor, who is a certified public accountant, nor Wells Fargo's own representative could fully understand or explain the accounting offered").

[3] *Stewart I*, 391 B.R. at 331.

2

No. 09-30832

full reconciliation of Ms. Stewart's mortgage account. Inspecting those records, the bankruptcy court concluded Wells Fargo's proof of claim was rife with errors, including:

- Calculations that were "wholly incorrect" under the terms of the mortgage contract;[4]

- Late fees generated through questionable accounting and imposed without notice to the debtor;[5]

- Charges for drive-by inspection reports that were plainly erroneous, with some reports describing a wood-frame house and others describing a house with a brick exterior;[6]

- Charges for broker price opinions (BPOs) that Wells Fargo was unable to document, several with duplicative charges, and charges for a BPO that could not have been generated on its stated date because Ms. Stewart's parish was then under a mandatory evacuation order for Hurricane Katrina;[7]

- Attorneys' fees and cost invoices that were invalid or inadequately documented.[8]

The bankruptcy court found that these errors caused Wells Fargo to overstate its claim by more than $10,000.[9]

The bankruptcy court incorporated by reference its findings from an earlier case involving Wells Fargo, *In re Jones*.[10] It found that Wells Fargo's mortgage claims exhibit systematic errors arising from its highly automated,

---

[4] *Id.* at 348; *see id.* at 346–49 & tbl.2, 352–55 & tbls.3–7.

[5] *Id.* at 339–42, 349–50.

[6] *Id.* at 344.

[7] *Id.* at 345–46.

[8] *Id.* at 351–55.

[9] *Id.* at 355, 357.

[10] 366 B.R. 584 (Bankr. E.D. La. 2007), *aff'd in part, Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577 (E.D. La. 2008); *see Stewart I*, 391 B.R. at 340.

computerized loan-administration system.[11] Although the court declined to rule that Wells Fargo acted in bad faith, it explained that lenders have little incentive to ensure accurate proofs of claim "because few debtors challenge their accounting and even less [sic] pay out their entire loan before discharge."[12] When left unchallenged, these inflated charges "'enlarge the debt of the estate, make reorganization more difficult for the debtor, and adversely impact upon the claims of the remaining creditors.'"[13]

The bankruptcy court observed that because the Bankruptcy Code instructs that proofs of claim must be treated as *prima facie* valid,[14] courts are unable to review or correct erroneous charges except on the rare occasion they are disputed by a debtor.[15] Perceiving this as a threat to the integrity of the bankruptcy system, and to prevent other errors from evading review, the bankruptcy court issued an injunction requiring Wells Fargo (1) "to audit every proof of claim it has filed in this District in any case pending on or filed after April 13, 2007";[16] (2) "to provide a complete loan history on every account" and

---

[11] *Stewart I*, 391 B.R. at 335–39.

[12] *Jones*, 366 B.R. at 590.

[13] *Id.* at 595 (quoting *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1055 (5th Cir. 1986)).

[14] 11 U.S.C. § 502(a); *see also* FED. R. BANKR. P. 3001(f).

[15] The Supreme Court recently approved an amendment to Bankruptcy Rule 3001 requiring that, in an individual debtor case, "an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim." The amended rule will take effect on December 1, 2011, unless Congress enacts legislation to the contrary. *See* Supreme Court Approved Rules Amendments (April 26, 2011), http://www.uscourts.gov/RulesAndPolicies/ FederalRulemaking/PendingRules/SupremeCourt042611.aspx. Previously, as this case illustrates, some lenders withheld this information unless and until the debtor disputed the proof of claim, making it difficult to uncover and correct erroneous charges.

[16] April 13, 2007, is the date the bankruptcy court issued its opinion in *Jones*, and thus when Wells Fargo was put on notice that its accounting was inadequate.

No. 09-30832

to file that history with the appropriate court; and (3) "to amend . . . proofs of claim already on file to comply with the principles established in this case and *Jones*."[17]

Wells Fargo appealed, challenging both the calculation of the claim amount and the injunction. The district court affirmed in all respects.[18]

II

Wells Fargo argues that the injunction is facially invalid, that it was imposed without due process, and that it exceeds the statutory authority of the bankruptcy court. We conclude the court lacked jurisdiction to order injunctive relief in this case and say no more.

First, it is clear that Ms. Stewart lacked standing to support an injunction.[19] The Supreme Court has instructed that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."[20] In *City of Los Angeles v. Lyons*, the Court held that a claim for injunctive relief must have its own Article III footing, separate from the past injury that supports claims for retrospective relief.[21] Blending demands of equity and Article III, *Lyons* held that to obtain injunctive relief, the plaintiff

---

[17] *Stewart I*, 391 B.R. at 357. In a subsequent order, the court clarified that the injunction was an exercise of its authority under 11 U.S.C. § 105(a) to take any action necessary to prevent an abuse of process. *In re Stewart* (*Stewart II*), No. 07-11113, 2008 WL 5096011, at *10 (Bankr. E.D. La. Oct. 15, 2008).

[18] *In re Stewart* (*Stewart III*), No. 08-3225, 2009 WL 2448054 (E.D. La. Aug. 7, 2009).

[19] The parties did not address standing in their initial briefs. Following oral argument, we requested supplemental briefing on whether there exists an Article III case or controversy regarding injunctive relief when the debtor has not personally asserted a likelihood of future injury from the allegedly unlawful conduct.

[20] *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).

[21] 461 U.S. 95, 101–110 (1983).

must "establish a real and immediate threat that he w[ill] again" suffer similar injury in the future.[22]  Absent such a showing, there is no case or controversy regarding prospective relief, and thus no basis in Article III for the court's power to issue an injunction.  It is true that bankruptcy courts are non-Article III tribunals, yet they deploy a requirement of injury in a manner that is "even more exacting . . . than traditional constitutional standing."[23]  A party that lacks standing to support jurisdiction in an Article III court also lacks standing for that claim to be adjudicated by a bankruptcy court.

This case involves only the estate of a single debtor, Ms. Stewart, and the dispute is between the estate and the bank.  There is no demonstrated likelihood that Ms. Stewart will ever again be subject to an incorrect proof of claim filed by Wells Fargo.  Ms. Stewart filed no counterclaims on behalf of a class, nor does this case present any class claims by the trustee or by other creditors adversely affected by inflated proofs of claim.[24]  The injunctive relief ordering the content of filing in other bankruptcy cases cannot find its jurisdictional basis in Ms. Stewart's objection to the bank's claim in her case.[25]  The power of the bankruptcy court must be found elsewhere.

---

[22] *Id.* at 105; *see also Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 210–12 (1995).

[23] *In re Coho Energy, Inc.*, 395 F.3d 198, 203 (5th Cir. 2004).

[24] *Cf. Gratz v. Bollinger*, 539 U.S. 244, 263–68 (2003) (allowing plaintiff to seek prospective relief because the district court properly certified a class containing members who face an imminent threat of future harm).  We note that Ms. Stewart and several other debtors have filed a series of putative class claims against Wells Fargo in a separate proceeding.  *See Fitch v. Wells Fargo Bank, N.A.*, 423 B.R. 630 (E.D. La. 2010).  We express no opinion on the merits of that case.

[25] Indeed, Ms. Stewart did not request the injunction at issue and has not taken a position on Wells Fargo's objections to it in these proceedings.

No. 09-30832

This injunction likewise does not follow from "the inherent power of the court to protect its jurisdiction and judgments and to control its docket."[26] While the deficiencies found in Wells Fargo's claim here do cast a shadow on its other claims, misdeeds in other cases can be addressed by the judges in those cases. If the case-by-case process, with the discipline of developed jurisprudence, is thought to be inadequate, there remains the rulemaking authority.

The United States Trustee defends the injunction, resting on the court's "collateral" power to protect from abuse of process.[27]  That authority of course must also be grounded in Article III, so we think it is simply another way of framing the inherent power of the court to do those things necessary to its discharge of judicial duty.  It is not a distinct grant of authority.  Accepting that the court has power to address certain issues collateral to the case before it, this injunction impermissibly aims to treat Wells Fargo's presentation of its claims in other cases from this single case.  We do not have a pattern of conduct that flouts a judicial ruling in subsequent cases.  An injunction has not been shown to be sufficiently necessary.

We need not here undertake to draw bright boundaries to the well-established power of a court to correct abuses of its process.  We say only this: the injunction here was outside that boundary.  The issued injunction ranges far beyond the dimensions of this case to police a range of cases untested here by the adversary process.  Its specific commands are not for the benefit of Ms. Stewart, whose injuries are fully remedied without the injunction.  Rather, the injunction is aimed at other cases in which Wells Fargo has appeared or might appear before the bankruptcy courts.  While justification for the bankruptcy court's

---

[26] *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986).

[27] *See Cooter & Gell v. Harmarx Corp.*, 496 U.S. 384, 395–96 (1990); *Qureshi v. United States*, 600 F.3d 523, 525–26 (5th Cir. 2010).

No. 09-30832

frustration is plentiful, its injunction lacks jurisdictional legs.  We must therefore vacate the injunction as exceeding the reach of the bankruptcy court in this case.[28]

III

Wells Fargo also seeks review of several legal rulings interpreting the mortgage agreement.  The parties have now settled their differences with respect to Ms. Stewart's debts.[29]  At oral argument, counsel for Ms. Stewart represented that

> My debtor, Stewart, . . . we've got the relief . . . . My case is fixed. . . . The dollar amounts are not on appeal. . . . [M]y legal representation [is] of a specific debtor who's got her relief and has been paid and the mortgage has been adjusted . . . .  My debtor's been satisfied.

Wells Fargo acknowledges this development in its supplemental brief.  Because neither the injunction nor the calculation of Ms. Stewart's debt are properly before us, we dismiss as moot Wells Fargo's appeal of legal rulings underlying the bankruptcy court's interpretation of the mortgage.[30]

We accordingly VACATE the injunction and DISMISS AS MOOT the appeal of all other issues.

---

[28] We need not address Wells Fargo's contention that the bankruptcy court may not issue an injunction that retrospectively mandates conduct with respect to prior claims, including those in closed cases.

[29] Wells Fargo's notice of appeal also challenged rulings in a second case, *In re Fitch*, 390 B.R. 834 (Bankr. E.D. La. 2008).  Wells Fargo has since advised in its brief that it no longer seeks review of that case.

[30] We note that because Ms. Stewart has little personal interest remaining in the case, she did not brief these issues in any meaningful detail.  *Cf. Baker v. Carr,* 369 U.S. 186, 204 (1962) (preferring that litigants have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination").