Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FAUSTINO XAVIER BETANCOURT COLÓN<br><br>Apelante<br><br>v.<br><br>ZULYER PHARMACY, INC, Y OTROS<br><br>Apelados | KLAN202300280 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso número: HU2021CV00485<br><br>Sobre: Petición de Orden |

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Rivera Marchand y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 27 de octubre de 2023.

Comparece la parte apelante, Faustino Xavier Betancourt Colón, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 27 de enero de 2023, notificada el 30 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de sentencia sumaria promovida por la parte apelada, Zulyer Pharmacy, Inc. En su consecuencia, desestimó y archivó la causa de acción.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

## I

El 20 de mayo de 2021, Faustino Xavier Betancourt Colón (Betancourt Colón o apelante) incoó una *Demanda* en contra de Zulyer Pharmacy, Inc. (Farmacia Zulyer o apelada), mediante la cual solicitó un interdicto permanente al amparo del Título III de la *Ley para Estadounidenses con Discapacidades*, conocida en inglés como *American Disabilities Act*, 42 USC sec. 12188 (Ley ADA).[1] Indicó que tenía

---

[1] Entrada Núm. 1 del Caso Núm. HU2021CV00485 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). La acción de epígrafe fue enmendada el 18 de marzo

discapacidades físicas que limitaban sustancialmente varias de sus actividades cotidianas principales, tales como: caminar, estar y mantenerse de pie, levantar objetos, inclinarse, hablar, respirar, entre otras. Además, señaló que utilizaba un *mobility scooter* equivalente a una silla de ruedas. Alegó que, en una de sus visitas –como visitante frecuente– a la Farmacia Zulyer, encontró barreras arquitectónicas que interfirieron con su capacidad de usar y disfrutar los bienes, servicios, privilegios y acomodos ofrecidos por la apelada. Arguyó tener conocimiento de barreras ilegales que limitaban e interferían su acceso a los mostradores, baños y pasillos de la Farmacia Zulyer. Adujo que la estructura, así como las condiciones del referido negocio, no permitían que usara y disfrutara de los bienes y servicios ofrecidos en este, pues no se encontraba adecuado para el uso y disfrute de una persona discapacitada. Según sostuvo, sería inútil enfrentar estas barreras porque afrontarlas equivaldría a someterse a una situación humillante, discriminatoria y peligrosa.

Como resultado de las presuntas barreras arquitectónicas, Betancourt Colón arguyó que sufrió humillación, angustia y menoscabo de su dignidad personal y derecho a vivir libre de discriminación. En virtud de ello, solicitó, entre otras cosas, un interdicto estatutario permanente que ordenara a la Farmacia Zulyer a tomar las medidas necesarias para eliminar las referidas barreras, en cumplimiento con los requisitos establecidos en la Ley ADA, para que dicha instalación fuera totalmente accesible para personas con movilidad limitada.

Por otro lado, Betancourt Colón alegó tener legitimación activa como *tester* de derechos civiles. Planteó que tenía *standing* para incoar la acción de epígrafe, como persona con la intención de regresar a la Farmacia Zulyer para buscar e identificar barreras arquitectónicas que existieran en el futuro. Sobre ese particular, citó casos resueltos por la Corte de Apelaciones de los Estados Unidos para el Primer Circuito.

---

de 2022 y el 8 de julio del mismo año, respectivamente. Véase, Apéndice del recurso, págs. 1-23.

Luego de varias incidencias procesales, el 16 de agosto de 2022, se celebró una vista sobre el estado de los procedimientos.[2] Surge de la correspondiente *Minuta* que el Tribunal de Primera Instancia ordenó a la parte apelante presentar un listado con especificaciones de las barreras arquitectónicas que se debían reparar en la Farmacia Zulyer.

En cumplimiento con lo anterior, el mismo día, Betancourt Colón sometió una moción en la cual adjuntó un *Informe de Inspección Ocular* (*Informe*).[3] Indicó que el referido documento, confeccionado por Gabriel Santana Concepción (Santana Concepción), describía en detalle e ilustraba las áreas que estaban en controversia. Según surge del *Informe*, Santana Concepción utilizó una cinta métrica y regla para medir. En particular, Betancourt Colón desglosó las áreas que alegadamente estaban en incumplimiento.

Betancourt Colón sostuvo que los mostradores de servicios ubicados en el área de entrega de medicamentos, regalos, empaque y pago eran muy altos para ser utilizados desde su silla de ruedas, ello en violación a varias secciones de la Ley ADA. Especificó que las referidas barreras superaban las 36" de alto en incumplimiento con las Guías de Diseño Accesible promulgadas por el Departamento de Justicia de los Estados Unidos. Sobre ese particular, Santana Concepción señaló en el *Informe* que los mostradores en el área de servicio medían 36.5", mientras que los del área de regalos y empaque medían 38", por lo que no permitían que una persona en silla de ruedas pudiera solicitar un servicio sin ponerse de pie.

En el baño de la Farmacia Zulyer, la parte apelante adujo que el área adyacente al inodoro tenía un espacio muy estrecho, conforme a los criterios de la sección 603.2.3 de la Ley ADA. Por su parte, Santana Concepción afirmó que, según su percepción, el espacio disponible para que una persona que utilizara silla de ruedas pudiera hacer buen uso del

---

[2] Entrada Núm. 81 del Caso Núm. HU2021CV00485 en el SUMAC.
[3] Entrada Núm. 79 del Caso Núm. HU2021CV00485 en el SUMAC.

baño y el inodoro, era bastante estrecho. Particularizó que, desde el inodoro hasta la pared frontal había un espacio de 31" y cinco octavos ($\frac{5}{8}$), mientras que, desde el inodoro hasta una cesta de basura, ubicada frente a este, había 21".

Asimismo, Betancourt Colón mencionó que el lavamanos del baño era otra barrera arquitectónica y lo catalogó como inaccesible, conforme a las secciones 606.2 y 605.5 de la Ley ADA. Planteó que el lavamanos no contaba con el espacio suficiente para que una persona que usaba silla de ruedas pudiera transitar en el espacio disponible para lavarse las manos o mirarse en el espejo. De igual modo, arguyó que el área debajo del lavamanos era inconsistente con el citado estatuto, pues no había espacio suficiente para ubicar correctamente la silla de ruedas. En cuanto a ello, Santana Concepción describió en su *Informe* que, desde el lavamanos hasta la puerta del baño, existían 44.5" y que el espacio debajo de este no estaba libre ni despejado, ya que había tubería. Según su percepción, expresó que dicho espacio era estrecho y, por las mencionadas tuberías, era difícil ubicar las piernas –frontalmente– de una persona que utilizara silla de ruedas.

La parte apelante sostuvo, además, que el dispensador de toallas de papel que se encontraba en dicho baño incumplía sustancialmente con la sección 308.2 de la Ley ADA, debido a su altura. Sobre ese particular, Santana Concepción indicó en el *Informe* que el dispensador estaba ubicado a 59" de altura desde el suelo, lo cual, según su percepción, no permitía que una persona desde su silla de ruedas pudiera alcanzarlo.

En su escrito, Betancourt Colón planteó, en esencia, que las medidas del baño eran inconsistentes con varias secciones de la Ley ADA y dificultaba el tránsito para personas con discapacidades de movilidad. Según surge del *Informe*, Santana Betancourt mencionó que, desde la puerta del baño hasta el lavamanos habían 44.5". Catalogó el espacio como "muy poco" para personas que utilizaran silla de ruedas, pues el

espacio libre entre las cosas ubicadas dentro de este era "bastante reducido".

En virtud de lo anterior, la parte apelante solicitó, en síntesis, que se le ordenara a la Farmacia Zulyer a presentar un plan de eliminación de barreras y que rindiera informes trimestrales de cumplimiento. Atendido lo anterior, el 18 de agosto de 2022, notificada al día siguiente, el foro primario ordenó a la parte apelada a preparar una tabla con las barreras arquitectónicas desglosadas y señalar el tiempo necesario para corregirlas o indicar alguna defensa en derecho.[4]

En atención a lo ordenado, el 8 de septiembre de 2022, la Farmacia Zulyer presentó una *Moción en Cumplimiento de Orden*.[5] Indicó que contrató al perito y arquitecto Jorge R. Calderón López (Calderón López o perito), quien visitó y presentó un *Informe Pericial "Suplementario"* (*Informe Suplementario*), el cual adjuntó a su escrito.[6] Alegó que dicho informe cubrió las cinco (5) áreas reclamadas por Betancourt Colón, citando, a su vez, las disposiciones y estándares aplicables, según el Código de Reglamentación Federal aplicable. Según adujo, Calderón López concluyó, en su *Informe Suplementario*, que ninguna de las alegadas barreras arquitectónicas especificadas por la parte apelante estaba en incumplimiento con la Ley ADA. Además, resaltó que el perito identificó que el espejo localizado encima del lavamanos del baño no estaba localizado a una altura de 40", según exigía la sección 603.3 de la Ley ADA. No obstante, la parte apelada afirmó que, posteriormente, el espejo fue colocado a la altura requerida. Además, señaló que Calderón López añadió en el *Informe Suplementario*, como parte de su conclusión, que la Farmacia Zulyer tenía disponible un "servi-carro" donde le llevaban los artículos al vehículo de los clientes, de ser necesario.

---

[4] Entrada Núm. 80 del Caso Núm. HU2021CV00485 en el SUMAC.

[5] Entrada Núm. 82 del Caso Núm. HU2021CV00485 en el SUMAC.

[6] Precisa destacar que Calderón López indicó en el *Informe Suplementario* poseer veinte (20) años de experiencia en la industria de la construcción, incluyendo el manejo de los requisitos de la Ley ADA en el diseño de estructuras. A su vez, sostuvo haber participado como perito en varios casos sobre dicho estatuto. Véase, *Exhibit A* de la Entrada Núm. 82 del Caso Núm. HU2021CV00485 en el SUMAC, pág. 2.

Por otro lado, la parte apelada sostuvo en su moción que el informe sometido por Betancourt Colón estaba desprovisto de información que demostrara la confiabilidad de la inspección realizada por Santana Concepción. A su vez, arguyó que el apelante nunca hizo las alegaciones específicas de discrimen ordenadas por el tribunal.

Entendido el escrito de la parte apelada, el 12 de septiembre de 2022, el foro *a quo* dio por terminado el descubrimiento de prueba.[7] En vista de ello, concedió un término para que las partes presentaran mociones dispositivas.

El 13 de octubre de 2022, la Farmacia Zulyer instó una *Moción Solicitando se Dicte Sentencia por la Vía Sumaria*.[8] En síntesis, alegó que Betancourt Colón no tenía legitimación activa para incoar la acción de epígrafe, ya que este último solo visitó el establecimiento en una ocasión, pero nunca realizó una compra ni solicitó servicio alguno. Arguyó que, aun si se asumiera que la parte apelante tenía *standing* como *tester* para instar su reclamo, no había un caso o controversia porque no existían barreras arquitectónicas o violaciones a la Ley ADA. Por otro lado, planteó que Betancourt Colón renunció a presentar un perito y optó por someter un informe de la inspección ocular de un tercero. Sobre ese particular, sostuvo que dicho documento no se podía considerar como un reporte de un perito porque no contenía los elementos requeridos para tal caracterización.

En respuesta, el 7 de noviembre de 2022, Betancourt Colón se opuso.[9] En esencia, sostuvo que su acción cumplía con los tres elementos para establecer un caso *prima facie* bajo la Ley ADA, toda vez que (1) tenía una discapacidad protegida por dicho estatuto, (2) la parte apelada operaba

---

[7] Entrada Núm. 83 del Caso Núm. HU2021CV00485 en el SUMAC.

[8] Apéndice del recurso, págs. 48-82. Junto a su petitorio, la parte apelada incluyó los siguientes documentos: (1) copia de la *Declaración Jurada* suscrita por Reynaldo Rosario el 11 de febrero de 2022; (2) copia del *Informe Pericial* confeccionado por Calderón López, con fecha del 6 de septiembre de 2021; (3) copia del *Informe Pericial "Suplementario"* preparado por Calderón López, con fecha del 6 de septiembre de 2022; (4) copia de la *Declaración Jurada Suplementaria de Reynaldo Rosario*, con fecha del 13 de octubre de 2022; (5) copia de la *Declaración Jurada del Arq. Jorge R. Calderón L[ó]pez*, con fecha del 12 de octubre de 2022. Véase, Apéndice del recurso, págs. 83-122.

[9] Íd., págs. 123-150. La parte apelante acompañó su escrito con copia de la *Declaración Sujeta a Pena de Perjurio* suscrita por Betancourt Colón el 3 de noviembre de 2022. Véase, Apéndice del recurso, págs. 151-178.

un lugar de acomodo público y (3) esta había discriminado en su contra. Según adujo, tenía legitimación activa para incoar dicha acción, ya que las barreras existentes en la Farmacia Zulyer eran la causa de su daño legal. Particularizó que la falta de acceso completo, libre y espontáneo al establecimiento le había ocasionado daños. Argumentó que las barreras identificadas, afectaban su salud emocional y física porque se sentía discriminado al no poder acceder, en las mismas condiciones, los bienes y servicios que las personas sin discapacidad. Añadió que las mencionadas barreras tenían la posibilidad de ser remediadas por la parte apelada. Sobre la legitimación activa, planteó que el hecho de que un reclamante fuera un *tester* no significaba que no tenía *standing*, siempre y cuando cumpliera con los requisitos constitucionales de dicha figura, los cuales se habían cumplido en el caso de autos. Por otro lado, alegó que la controversia no se había tornado académica porque la Farmacia Zulyer mantenía las barreras para personas discapacitadas, por lo que no procedía conceder la moción de sentencia sumaria solicitada por la parte apelada.[10]

De otro lado, el 14 de noviembre de 2022, la parte apelante presentó una *Moción en Solicitud de Sentencia Sumaria*.[11] Reiteró que los elementos para establecer un caso *prima facie* bajo la Ley ADA estaban presentes en la acción de epígrafe. Desglosó, nuevamente, las presuntas barreras arquitectónicas en la Farmacia Zulyer que incumplían con la Guías de Diseño Accesible del año 2010. Argumentó que su daño era claro, pues tenía la intención de regresar al referido establecimiento, pero se veía desalentado porque la parte apelada no realizaba las modificaciones necesarias en cumplimiento con la normativa federal aplicable. En vista de ello, solicitó que se dictara sentencia sumaria a su favor y se le ordenara a la Farmacia Zulyer modificar la propiedad para que cumpliera con los

---

[10] Cabe mencionar que, el 29 de diciembre de 2022, la parte apelada replicó a la referida oposición. Véase, Apéndice del recurso, págs. 234-328.

[11] Apéndice del recurso, págs. 179-205. Junto a su moción, la parte apelante adjuntó copia de la *Declaración Sujeta a Pena de Perjurio* suscrita por Betancourt Colón el 3 de noviembre de 2022. Véase, Apéndice del recurso, págs. 206-233.

Estándares de Diseño Accesible en cuanto a las siguientes áreas: mostradores, baño y pasillos libres de obstrucciones.

El 29 de diciembre de 2022, la parte apelada sometió una *Oposición a Moción en Solicitud de Sentencia Sumaria*.[12] En síntesis, negó la existencia de las alegadas barreras arquitectónicas. Afirmó que Betancourt Colón cumplía con los primeros dos requisitos para establecer un caso *prima facie*. No obstante, en cuanto al tercer y último requisito, sostuvo que la prueba demostraba que el apelante no fue discriminado como resultado de su discapacidad. Argumentó que Betancourt Colón no había establecido con prueba fehaciente que había sufrido un daño por el presunto incumplimiento con los estándares de diseño aplicables. En virtud de lo anterior, solicitó que se denegara el petitorio sumario promovido por la parte apelante y que se declarara Ha Lugar su solicitud de sentencia sumaria.

Evaluadas las posturas de las partes, el 27 de enero de 2023, notificada el 30 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa, mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria promovida por la Farmacia Zulyer, mientras que denegó el petitorio sumario presentado por Betancourt Colón.[13] Desglosó las siguientes determinaciones de hechos:

1. La Farmacia Zulyer, en adelante "Farmacia"[,] ocupa un espacio de alquiler dentro del Centro Comercial denominado Ralph's Plaza en el Municipio de Naguabo.
2. La Farmacia ocupa el lugar desde el 2013.
3. Reynaldo Rosario es propietario de la farmacia y arrendatario del espacio de alquiler.
4. El diseño del interior de la farmacia fue preparado por Reynaldo Rosario, incluyendo las góndolas, pasillos, recetario y área para pagar.
5. Las puertas de acceso a la farmacia miden más de sesenta (60) pulgadas de ancho siendo lo suficientemente anchas para estar en cumplimiento y permitir la entrada de personas en silla de ruedas.
6. No existen obstáculos en el piso que representen barreras arquitectónicas.

---

[12] Apéndice del recurso, págs. 329-371. La parte apelada acompañó su oposición con los siguientes documentos: (1) copia de la *Declaración Jurada* suscrita por Reynaldo Rosario el 11 de febrero de 2022; (2) copia del *Informe Pericial* confeccionado por Calderón López, con fecha del 6 de septiembre de 2021; (3) copia del *Informe Pericial "Suplementario"* preparado por Calderón López, con fecha del 6 de septiembre de 2022; (4) copia de la *Declaración Jurada Suplementaria de Reynaldo Rosario*, con fecha del 13 de octubre de 2022; (5) copia de la *Declaración Jurada del Arq. Jorge R. Calderón L[ó]pez*, con fecha del 12 de octubre de 2022. Véase, Apéndice del recurso, págs. 372-411.
[13] Íd., págs. 412-426.

7. Una vez dentro de la farmacia[,] existe una amplia ruta de acceso a [los] bienes y servicios de más de treinta y seis (36) pulgadas[,] permitiendo el cómodo acceso de las personas con impedimentos que puedan moverse dentro de la tienda.

8. Todos los pasillos entre cada una de las góndolas miden cuarenta y cuatro (44) pulgadas y media (1/2) lo que está bien por encima de las treinta y seis (36) pulgadas requeridas.

9. Toda la superficie interior que compone la ruta de acceso es estable, firme, y anti resbaladiza.

10. No existen desniveles, rampas ni elevadores o escaleras dentro de la farmacia que sirvan como barreras arquitectónicas.

11. La superficie para pagar mide treinta y seis (36) pulgadas de alto.

12. Las guías para ser utilizadas para identificar el cumplimiento de la farmacia con ADA son las del año 2010 no las del 1991 por la fecha de construcción de la Farmacia.

13. Con relación al primer elemento de incumplimiento reclamado por la parte Demandante sobre que el área adyacente al inodoro no es accesible bajo los criterios de ADAAG 2010 § 603.2.3, dicha sección tiene que ver con el giro de la puerta de la entrada del baño. Las medidas interiores del baño son suficientes para estar en cumplimiento con dicha sección por lo que ese espacio cumple con la misma. El baño tiene medidas de 61" x 97", y está diseñado para la utilización de una sola persona.

14. Con relación al segundo elemento del lavamanos y su espacio a su alrededor no son accesibles, el diseño, dimensiones y componentes cumplen con la sección 606.2 y las secciones 305 y 306.

15. La sección 605.5 citada por la parte Demandante en este segundo elemento no existe en los estándares ADAAG 2010 por lo que no puede haber incumplimiento a la misma.

16. Con relación a la tercera alegación del dispensador de toallas de papel, la misma es inaplicable debido a que el dispensador es accesible por el lado y no por el frente, por lo que el usuario no tiene que hacer un "forward reach". La sección citada por la parte Demandante tampoco hace referencia a que la misma aplique a dispensadores de toallas como se alega. Por tanto, no existe tal incumplimiento con la sección 308.2. Además, el dispensador de toallas tiene sensor de movimiento por lo que se activa fácilmente sin necesidad de que la persona alcance su altura. Aun así, se recomienda que se relocalice el dispensador de toallas a una altura de 48".

17. El dispensador de toallas fue relocalizado en la Farmacia según sugerido por el Arq. Jorge R. Calderón López.

18. Con relación a la cuarta alegación de que las medidas del área del baño no son accesibles, la misma adolece de las mismas deficiencias cuando se citan disposiciones por la parte Demandante no aplicables a la Farmacia, de la ADAAG de 1991.

19. Con relación a la cuarta alegación de que las medidas del área del baño no son accesibles bajo ADAAG de 2010, las dimensiones del baño cumplen con la sección 213.2 y[,] a su vez[,] con la 603, la evaluación de daño de su diseño, dimensiones y componentes, por lo que dicho reclamo es inmeritorio.

20. El espejo encima del lavamanos debe estar localizado a una altura de 40" según dispone la sección 603.3. Esto es de fácil cumplimiento ya que el espejo no está fijo de manera hermética.

21. El espejo del baño fue relocalizado en la Farmacia según sugerido por el Arq. Jorge R. Calderón López.

22. Con relación a que la alegada violación a la sección 304.3, el área de giro dentro del baño, su diseño, dimensiones y componentes están en cumplimiento con la misma. Específicamente, el baño tiene medidas de 61" x 97" que al restarle las dimensiones de las losas instaladas en las paredes

se reduce a 59" x 95" cumpliendo sustancialmente con la referida sección.

23. Los propios estándares de la Ley ADA reconocen la imperfección en la construcción por lo que permiten tolerancias, siempre y cuando el diseño establecido no establezca un rango de cumplimiento.

24. En cuanto a la quinta alegación de que los mostradores no son accesibles, s[o]lo se atienden los relacionados con ADAAG 2010. Las mencionadas secciones establecen lo siguiente:

904.3.1 Aisle. Aisles shall comply with 403.

904.4 Sales and Service Counters. Sales counters and service counters shall comply with 904.4.1 or 904.4.2. The accessible portion of the counter top shall extend the same depth as the sales or service counter top.

904.1 General. Check-out aisles and sales and service counters shall comply with the applicable requirements of 904.

En cuanto a los pasillos "aisles" en el informe original se indicó que dentro de la farmacia existe una amplia ruta de acceso a bienes y servicios de más de treinta y seis (36) pulgadas permitiendo el cómodo acceso de las personas con impedimentos que puedan moverse dentro de la tienda. Todos los pasillos entre cada una de las góndolas miden cuarenta y cuatro (44) pulgadas y media. Toda la superficie interior que compone la ruta de acceso es estable, firme, y anti resbaladiza.

25. Sobre las secciones 904.4 y 904.1 el "counter" en el área de los medicamentos tiene una altura de 39"[,] mientras que el "counter" en el área de regalos tiene una altura de 38".

26. Ambos "counters" tiene[n] varios propósitos[,] incluyendo el pago de mercancía, en otras palabras, son utilizados como "check-out counters". Particularmente, los "counters" en el área de medicamentos donde se ordenan y cobran los mismos.

27. A dichos "counters" les aplica la Sección 904.3.2 que permite una altura de hasta 40". Dicha sección establece lo siguiente:

904.3.2 Counter. The counter surface height shall be 38 inches (965 mm) maximum above the finish floor or ground. The top of the counter edge protection shall be 2 inches (51 mm) maximum above the top of the counter surface on the aisle side of the check-out counter.

28. La sección aplicable a los mostradores de servicio en el área de medicamentos y de regalos es la 904.3.2[,] por lo que ambos mostradores cumplen con las disposiciones aplicables.

29. El informe de inspección ocular preparado por el Sr. Gabriel Santana Concepción se limita a opinar sobre su percepción del espacio del baño sin citar referencia alguna de diseño, código o ley que sustente su percepción.

30. La forma de medición utilizada por el Sr. Gabriel Santana Concepción no es adecuada para determinar cumplimiento con los estándares de Ley ADA.

31. La Farmacia Zulyer no está en incumplimiento con alguna de las alegaciones 1 al 5 nombradas en la moción de cumplimiento de orden sobre ADA.

32. La Farmacia Zulyer tiene disponible servicio de servicarro donde se le llevan los artículos de la farmacia al vehículo de cualquier cliente de ser necesario.[14]

El foro de origen indicó que no existía controversia de que

Betancourt Colón era una persona con una discapacidad física cualificada

bajo la Ley ADA y que la Farmacia Zulyer era un lugar de acomodo público.

En cuanto al alegado discrimen motivado por la discapacidad de la parte

---

[14] Apéndice del recurso, págs. 415-418.

apelante, concluyó que este último no presentó prueba pericial para establecer la existencia de las presuntas barreras descritas en la acción de epígrafe. Señaló que Betancourt Colón se limitó a mencionar dichas barreras, intentó probar su existencia a través de una declaración jurada suscrita por un tercero, no identificado como perito ni ingeniero, y alegó que la mera existencia de estas era de por sí discriminatoria e incumplían con varias secciones de las Guías de Diseño Accesible de 2010. Determinó que, a su juicio, la referida declaración jurada no era suficiente para controvertir los hechos propuestos por la solicitud de sentencia sumaria promovida por la parte apelada, ni para probar la existencia de las barreras arquitectónicas, conforme exigía un caso *prima facie* de discrimen al amparo del Título III de la Ley ADA. Por otro lado, indicó que la Farmacia Zulyer contaba con un informe pericial que establecía su cumplimiento con lo requerido por el citado estatuto.

En la determinación apelada, el foro *a quo* resolvió que procedía la solicitud de sentencia sumaria presentada por la Farmacia Zulyer, toda vez que Betancourt Colón no logró demostrar su caso *prima facie* de discrimen al amparo del Título III de la Ley ADA. Concluyó que la parte apelante no había establecido con prueba fehaciente que había sufrido daño alguno, ni mucho menos que la Farmacia Zulyer hubiera discriminado en su contra por incumplir con los estándares de diseño aplicables. Particularizó que quedó demostrado que la recomendación del perito, en cuanto a la altura del dispensador de papel toalla en el baño del establecimiento, así como el requisito de colocar el espejo del baño a la altura especificada por la reglamentación aplicable, fueron corregidas por la parte apelada.

Por otro lado, el Tribunal de Primera Instancia destacó que tenía conocimiento de los casos presentados por la parte apelante en otros tribunales y que el Foro intermedio había resuelto controversias similares a la del caso de epígrafe donde Betancourt Colón era parte del pleito. Especificó que un panel hermano de esta Curia había resuelto en el caso *Faustino Betancourt v. Municipio de Carolina*, KLAN202200617, que

Betancourt Colón no poseía legitimación activa y que se trataba de un caso típico de *Drive-by/Google lawsuit*, mediante el cual fungía como *tester* bajo la Ley ADA. El foro de origen concurrió con lo expresado por el Tribunal de Apelaciones en el citado caso, por entender que el caso de autos tampoco era la excepción.

En desacuerdo, el 10 de febrero de 2023, Betancourt Colón presentó una *Moción en Solicitud de Reconsideración*,[15] a la cual se opuso la Farmacia Zulyer el 8 de marzo del mismo año.[16] Atendido el petitorio, mediante *Resolución* del 10 de marzo de 2023, notificada el 14 del mismo mes y año, el foro primario declaró No Ha Lugar la solicitud de reconsideración.[17]

Inconforme, el 10 de abril de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró el TPI al dictar sentencia a favor del demandado y al no dictar sentencia a favor del demandante, habiendo este probado su caso adecuadamente.
>
> Erró el TPI al determinar como insuficiente la declaración sujeta a pena de perjurio del señor Faustino Betancourt para controvertir los "hechos materiales sobre los cuales no existe controversia real sustancial" expuestos por Zulyer Pharmacy, Inc. en su *Moción Solicitando se Dicte Sentencia por la Vía Sumaria*.
>
> Erró el TPI al determinar como insuficiente la declaración sujeta a pena de perjurio del señor Faustino Betancourt para demostrar la existencia de barreras arquitectónicas en la Farmacia Zulyer a través de la *Moción en Solicitud de Sentencia Sumaria*.
>
> Erró el TPI al no tomar en consideración ninguno de los "hechos que no están en controversia" expuestos por la parte apelante en su Moción en Solicitud de Sentencia Sumaria sabiendo que la parte apelada no logró controvertir los hechos negados mediante prueba admisible según la Regla 36.3 (b) (2) de Procedimiento Civil.
>
> Erró el TPI al determinar que las cajas, mercancías, y demás obstáculos que se encuentran en los pasillos y al frente de los mostradores de la Farmacia Zulyer son interrupciones aisladas o temporeras según 28 CFR § 36.211 (b).
>
> Erró el TPI al determinar que los mostradores de medicamentos y regalos son "check out aisle counters", o en la alternativa, aun si se consideran "checkt out aisle" *[sic]*, al determinar que están en cumplimiento a pesar de que no tienen "edge protection".

---

[15] Apéndice del recurso, págs. 427-469.
[16] Íd., págs. 477-497.
[17] Íd., págs. 498-502.

Erró el TPI al determinar que la parte apelante no había demostrado haber sufrido daño.

Erró el TPI al desestimar la demanda tomando como referencia otros casos en los que el señor Faustino Betancourt había actuado como demandante.

En cumplimiento con nuestra *Resolución* del 12 de abril de 2023, el 10 de mayo de 2023, la parte apelada compareció mediante *Alegato de la Parte Apelada*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, resuelto el 29 de septiembre de 2023; *Oriental Bank v. Caballero García*, 2023 TSPR 103, resuelto el 23 de agosto de 2023; *González Meléndez v. Municipio Autónomo de San Juan y otros*, 2023 TSPR 95, resuelto el 24 de julio de 2023; *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. et als. v. ELA et al.*, 2023 TSPR 24, 211 DPR ___ (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo

procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra, pág. 8; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un

hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. et als. v. ELA et al.*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una

sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Serrano Picón v. Multinational Life Insurance Company*, supra; *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra.

**B**

La *Ley para Estadounidenses con Discapacidades*, conocida en inglés como *American Disabilities Act*, 42 USC sec. 12188 (Ley ADA), fue promulgada por el Congreso de los Estados Unidos, entre otros fines, para brindar un mandato nacional –claro y completo– para la eliminación de la discriminación contra las personas con diversidad funcional. 42 USC sec. 12101(b)(1). (Traducción nuestra); *Spector v. Norwegian Cruise Line Ltd.*, 545 US 119, 128 (2005). Asimismo, mediante la citada ley, el Gobierno Federal pretende proporcionar estándares claros, sólidos, consistentes y ejecutables que aborden la discriminación en contra de la referida población. 42 USC sec. 12101(b)(2). (Traducción nuestra).

A tenor con la Ley ADA, el término *discapacidad* o diversidad funcional, con respecto a una persona, se refiere a:

(a) un impedimento físico o mental que limita sustancialmente una o más actividades principales de la vida de tal persona;

(b) un registro de dicho impedimento; o

(c) de quien se considera o percibe que tiene tal impedimento. 42 USC sec. 12102(1). (Traducción nuestra).

Conforme a la finalidad de la Ley ADA, el Título III del mencionado estatuto establece una prohibición general de discrimen en contra de personas con diversidad funcional; ello, en el contexto del disfrute de lugares de acceso público. En particular, la sección 12182 de la Ley ADA dispone que ninguna persona será discriminada por motivos de diversidad funcional en el disfrute pleno e igualitario de los bienes, servicios, instalaciones, privilegios, ventajas o alojamiento de cualquier lugar de acomodo público por parte de alguna persona que posea, arrende u opere dicho lugar. 42 USC sec. 12182(a). (Traducción nuestra). Para propósitos de lo anterior, las prácticas de discrimen, según la referida Ley, incluyen, entre otras, fallar en remover barreras arquitectónicas de naturaleza estructural, ubicadas en las facilidades existentes –sin incluir las barreras que solo pueden removerse mediante la readaptación de vehículos– donde tal remoción es fácilmente alcanzable. 42 USC sec. 12182 (b)(2)(A)(iv). (Traducción nuestra). Igualmente, constituirá una práctica de discrimen cuando la entidad en cuestión, después de demostrar que la remoción de las barreras arquitectónicas no es fácilmente alcanzable, aun así, falla en hacer que los bienes, servicios, facilidades, privilegios, ventajas o acomodos brindados a personas con diversidad funcional estén fácilmente accesibles mediante métodos alternos. 42 USC sec. 12182 (b)(2)(A)(v). (Traducción nuestra).

En caso de infracciones a la precitada sección 12182 (b)(2)(A)(iv), se podrá solicitar un interdicto preliminar, el cual debe proveer una orden para que se modifiquen las instalaciones en aras de que sean accesibles para personas con diversidad funcional, en la medida requerida por el Título III de la Ley ADA. 42 USCA sec. 12188(a)(2). (Traducción nuestra). Cuando corresponda, las medidas cautelares del interdicto deberán contener la

exigencia de brindar una ayuda o servicio auxiliar, la modificación de una póliza o la provisión de métodos alternos, según exigido por el citado estatuto.

Ahora bien, para establecer un caso *prima facie* de discrimen al amparo del Título III de la Ley ADA, la parte demandante debe demostrar lo siguiente: (1) que es una persona cualificada con una discapacidad bajo la Ley ADA; (2) que la parte demandada opera un lugar de acomodo público, y (3) que la parte demandante fue discriminada por su discapacidad. *Medina–Rodríguez v. Fernández Bakery, Inc.,* 255 F.Supp. 3d 334, 341 (DPR 2017). (Traducción nuestra).

Al determinar si la persona reclamante tiene legitimación activa bajo la Ley ADA, es decir, el derecho a una causa de acción para solicitar un *injunction* de conformidad con lo anterior, un tribunal debe evaluar si dicha parte ha demostrado una amenaza real e inminente de que una barrera particular –ilegal– le puede causar un daño futuro. *Santiago Ortiz v. Caparra Ctr. Assocs., LLC*, 261 F. Supp. 3d 240, 248 (DPR 2016), citando a *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305–06 (1er Cir. 2003). (Traducción nuestra). El daño alegado debe ser real e inmediato, no abstracto o hipotético. *Íd.* (Traducción nuestra). Por lo tanto, la persona que solicita un interdicto preliminar debe establecer una amenaza real e inmediata de que se producirá una conducta ilegal. *Íd.*, citando a *O'Shea v. Littleton*, 414 US 488, 494 (1974). (Traducción nuestra).

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

Como primer señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al no dictar sentencia a su favor, habiendo este probado su caso adecuadamente. En su segundo señalamiento de error, plantea que el foro primario incidió al clasificar como insuficiente su declaración jurada para controvertir los hechos materiales expuestos por la Farmacia Zulyer en su petitorio sumario. A su vez, como

tercer señalamiento de error, alega que el foro *a quo* erró al determinar que la referida declaración es insuficiente para demostrar la existencia de barreras arquitectónicas en la Farmacia Zulyer. Como cuarto señalamiento de error, arguye que el foro de origen incidió al no tomar en consideración ninguno de los hechos que no están en controversia propuestos en su *Moción en Solicitud de Sentencia Sumaria*, aun cuando la parte apelada no los logró controvertir mediante prueba admisible, según exige la Regla 36.3(b)(2) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b)(2). Según aduce en su quinto señalamiento de error, el foro de instancia erró al determinar que las cajas, mercancías y demás obstáculos que se encuentran en los pasillos y al frente de los mostradores de la Farmacia Zulyer son interrupciones aisladas o temporeras, según la normativa federal aplicable (28 CFR sec. 36.211(b)). En su sexto señalamiento de error, indica que el foro sentenciador incidió al resolver que los mostradores de medicamentos y regalos se clasifican como *check out aisle counters*; en la alternativa, sostiene que, aun si se consideran como tal, el tribunal erró al determinar que están en cumplimiento, a pesar de no tener *edge protection.* Como séptimo señalamiento de error, alega que el Tribunal de Primera Instancia incidió al concluir que este no había demostrado haber sufrido un daño. Por estar los errores relacionados entre sí, los discutiremos conjuntamente.

Sabido es que, ante una solicitud de sentencia sumaria, esta Curia se encuentra en igual posición para efectuar un análisis *de novo* de los petitorios sumarios sometidos ante la consideración del foro primario. Tras evaluar las mociones sumarias presentadas y el expediente ante nos, colegimos que, ambas partes cumplieron sustancialmente con las formalidades y exigencias de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. Ahora bien, luego de examinar la totalidad del expediente ante nos, colegimos que no existen controversias sobre hechos medulares que impidan la solución de la presente causa por la vía

sumaria. En su consecuencia, nos corresponde determinar si el derecho se aplicó correctamente.

Hemos examinado cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable y concluimos que el Tribunal de Primera Instancia no erró en su determinación. Nos explicamos.

Según esbozáramos, para establecer un caso *prima facie* de discrimen al amparo del Título III de la Ley ADA, Betancourt Colón debía demostrar (1) que es una persona cualificada con una discapacidad bajo el citado estatuto, (2) que la Farmacia Zulyer opera un lugar de acomodo público, y (3) que el apelante fue discriminado por su discapacidad.

Las partes, así como el foro primario, están contestes de que no hay controversia en que, en el caso de autos, se cumplen con los primeros dos requisitos antes enumerados, lo cual confirmamos. La controversia que nos trae la parte apelante se centra específicamente en el tercer requisito; es decir, si Betancourt Colón fue discriminado por su discapacidad.

En su solicitud de sentencia sumaria, la parte apelante desglosó y describió la presencia de barreras arquitectónicas en la Farmacia Zulyer que, según adujo, su mera existencia constituía un discrimen por su diversidad funcional, lo cual le ocasionó daños. Para apoyar su contención, sometió como prueba documental un informe de inspección ocular en el cual se describían las áreas que presuntamente estaban en incumplimiento con la Ley ADA y la reglamentación federal aplicable. Dicho escrito fue confeccionado por Santana Concepción, quien no especificó sus credenciales, ni en calidad de qué realizaba la inspección; solo se limitó a realizar una inspección ocular utilizando una cinta métrica y regla para medir los espacios señalados como en incumplimiento por la parte apelante. A su vez, Betancourt Colón presentó, junto a su petitorio sumario, una declaración jurada suscrita por él, en la cual ilustró y describió las mencionadas barreras. En dicha declaración, aseguró la existencia de barreras arquitectónicas, ello basado en sus observaciones personales en

las tres (3) visitas, aproximadas, que indicó haber realizado a la Farmacia Zulyer. Por consiguiente, la parte apelante no presentó prueba fehaciente que estableciera la existencia de las alegadas barreras descritas en su reclamo.

Por el contrario, tanto en su oposición como en su propia moción de sentencia sumaria, la parte apelada sometió un informe pericial suplementario preparado por el perito y arquitecto Calderón López, quien sostuvo tener veinte (20) años de experiencia en la industria de la construcción, incluyendo el manejo de los requisitos de la Ley ADA en el diseño de estructuras, así como haber participado en calidad de perito en varios casos relacionados al citado estatuto. En dicho *Informe Suplementario*, el perito concluyó que ninguna de las alegadas barreras arquitectónicas estaba en incumplimiento con la Ley ADA; ello, fundamentado en las disposiciones y estándares federales aplicables que citó en el escrito. No obstante, identificó que el espejo localizado encima del lavamanos y el dispensador de papel toalla del baño en la Farmacia Zulyer no cumplían con la Ley ADA, los cuales, posteriormente, según planteado por la parte apelada, fueron colocados a la altura requerida. Así, y con la demás prueba documental sometida, la parte apelada controvirtió lo alegado por Betancourt Colón, pues evidenció la inexistencia de barreras arquitectónicas en su establecimiento.

Ante el escenario anterior, coincidimos con lo determinado por el foro primario, pues resulta forzoso concluir que la parte apelante falló en establecer un caso *prima facie* de discrimen al amparo del Título III de la Ley ADA. En conclusión, los errores señalados no se cometieron.

En cuanto al octavo y último error señalado, Betancourt Colón plantea que el foro apelado incidió al desestimar la acción de epígrafe, tomando como referencia otros casos similares en los que había actuado como parte demandante. Surge de la *Sentencia* apelada que el foro *a quo* señaló tener conocimiento de los casos incoados por el apelante en otros tribunales, así como de controversias similares atendidas por paneles

hermanos de este Foro intermedio. En particular, el foro de instancia citó en su dictamen el caso de *Faustino Betancourt v. Municipio de Carolina*, KLAN202200617, en el cual un panel hermano resolvió que Betancourt Colón no poseía legitimación activa, por fungir como *tester* bajo la Ley ADA.[18] Según expresó el foro primario, la acción de epígrafe tampoco era la excepción, por lo que concurrió con lo antes resuelto. Ahora bien, del referido dictamen no surge que el foro de instancia basara la adjudicación de la demanda en cuestión en otros casos donde Betancourt Colón compareció como demandante. De hecho, aun cuando el foro sentenciador concurrió con lo resuelto por un panel hermano de este Foro en cuanto a la legitimación activa del apelante, al analizar y aplicar el esquema provisto por la Ley ADA para establecer un caso *prima facie*, y según refleja el propio trámite procesal, le confirió legitimación activa a Betancourt Colón; pues, al así actuar, resolvió los méritos del caso al amparo del referido estatuto federal. Por consiguiente, el octavo error tampoco se cometió.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia* desestimando y archivando la demanda en contra de la parte apelada, Farmacia Zulyer. En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por los fundamentos que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Es importante resaltar que, recientemente, nuestro Tribunal Supremo aclaró que el dictamen de un panel del Tribunal de Apelaciones no obliga a otro panel que atienda la misma controversia, pues tal determinación solo podría considerarse como persuasiva, mas no vinculante. *Martínez Fernández et al. v. OGP et al.*, 2023 TSPR 75, 212 DPR __ (2023).